Buddy HINER *v.* DIRECTOR, Arkansas Employment Security Department; and Hiner Oils, Inc.

E 96-148                                          965 S.W.2d 785

Court of Appeals of Arkansas
Division III
Opinion delivered March 25, 1998

*Bagby law Firm, P.A.*, by: *Philip A. Bagby*, for appellant.

*Phyllis Edwards*, for appellee.

WENDELL L. GRIFFEN, Judge. Buddy Hiner seeks reversal of a Board of Review decision that he is not entitled to unemployment benefits. We hold that the decision of the Board of Review that appellant voluntarily left his work without good cause connected with the work is not supported by substantial evidence. Therefore, we reverse the decision, and remand the case to the Board so that an order awarding benefits can be entered.

Appellant was employed by Hiner Oils, Inc., for twenty-eight years. For most of that time he held the position of vice-president with the firm. After the murder of his brother, Gerald Hiner, who was the president and owner of the firm, appellant worked as company president. He was named co-executor of the estate of Gerald Hiner along with Gerald Hiner's son, Paul Hiner.

Paul Hiner and his sister inherited all the stock of the corporation after their father's death, and decided to sell the firm to a new entity to be known as Hiner Distributing, contrary to the desires of appellant. It is undisputed that because of appellant's opposition to the sale Paul Hiner and his sister contemplated initiating probate proceedings aimed at removing appellant as co-executor of the estate of Gerald Hiner, and that appellant's prospect for defeating that effort was dim because his nephew and niece owned all the stock of Hiner Oils.

As part of an agreement connected with the sale of the business to Hiner Distributing on September 1, 1994, appellant agreed to resign as co-executor of the estate of Gerald Hiner and as president of Hiner Oils, effective August 31, 1994. Appellant signed a covenant not to compete with the new entity for five years, for which he was paid $60,000. Appellant also agreed to serve as consultant to the new firm for three months (September, October, and November 1994), and was paid $5,000 per month for his services. However, appellant was not retained as an employee of the new firm. He had no employee benefits during the three months that he was a paid consultant, and was unemployed afterward.

Believing that he had been laid off or discharged, appellant filed a claim for unemployment insurance benefits with the Employment Security Division of the Arkansas Department of Labor (the Department). The Department denied benefits pursuant to Ark. Code Ann. § 11-10-513 (Supp. 1997), finding that he voluntarily left his last work without good cause connected with the work. Appellant appealed to the Appeal Tribunal, which reversed the Department's determination, found that appellant was discharged for reasons other than misconduct in connection with the work based on Ark. Code Ann. § 11-10-514, and modified the decision by awarding benefits. After the employer appealed to the Board of Review, the Board reversed the Appeal Tribunal and found that appellant voluntarily left his last work without good cause connected with the work, pursuant to Ark. Code Ann. § 11-10-513(a)(1).

■ Although appellant's first argument is that substantial evidence supports the decision by the Appeals Tribunal that awarded him unemployment benefits and that the Board of Review erred in reversing that decision, that argument does not correctly address the standard of review applicable to appeals from decisions by the Board of Review. On appeal in unemployment compensation cases, findings of fact by the Board of Review are conclusive if supported by substantial evidence, and review by the Court of Appeals is limited to determining whether the Board could reasonably reach its decision upon the evidence before it. *Rodriguez v. Director*, 59 Ark. App. 8, 952 S.W.2d 186 (1997). Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. This Court reviews the evidence and all reasonable inferences deducible therefrom in a light most favorable to the Board of Review's findings. *Rucker v. Director*, 52 Ark. App. 126, 915 S.W.2d 315 (1996). We do not conduct a *de novo* review of the evidence in an appeal from a Board of Review decision. Even when there is evidence upon which the Board might have reached a different decision, the scope of judicial review is limited to a determination of whether the Board could reasonably reach its decision upon the evidence before it. *Cowan v. Director*, 56 Ark. App. 17, 936 S.W.2d 766 (1997).

■ The Board of Review held that appellant was disqualified from receiving unemployment benefits because he voluntarily left his job with Hiner Oils without good cause connected with the work pursuant to Ark. Code Ann. § 11-10-513(a)(1). The term "good cause" means a justifiable reason for not accepting the particular job offered. *Id.*; *Rowlett v. Director*, 45 Ark. App. 99, 872 S.W.2d 83 (1994). To constitute good cause, the reason for refusal must not be arbitrary or capricious, and the reason must be connected with the work itself. *Id.* The question of what is good cause must be determined in the light of the facts in each case. *Wacaster v. Daniels*, 270 Ark. 190, 603 S.W.2d 907 (Ark. App. 1980). Although benefits will be denied an employee who leaves employment for general economic reasons not connected with some specific unfairness perpetrated by his employer, where the employer does an act that causes economic injury to the employee

that act may be good cause connected with the work within the meaning of the statute. *Jackson v. Daniels,* 269 Ark. 714, 600 S.W.2d 426 (Ark. App. 1980).

■ We have recently held that good cause sufficient to have a successful unemployment benefits claim is cause that would reasonably impel an average able-bodied, qualified worker to give up his employment. *Garrett v. Director,* 58 Ark. App. 7, 944 S.W.2d 865 (1997). Good cause depends not only on the good faith of the employee involved, which includes the presence of a genuine desire to work and to be self-supporting, but also depends on the reaction of an average employee. *Id.*

Viewing the evidence in the light most favorable to the Board of Review, we are unable to find substantial evidence to support its finding that appellant voluntarily quit his position as president of Hiner Oils without good cause connected with the work. Although appellant testified that he voluntarily signed a letter of resignation and the covenant not to compete, and that he was paid $60,000 as consideration for doing so and for resigning as co-executor of the estate of Gerald Hiner, there is no evidentiary basis for concluding that he did so without good cause connected with his work. Appellant's job was terminated because his employer was being sold to another entity. Appellant had no power to halt or otherwise control the circumstances of the sale because the company was owned by his nephew and niece, who inherited Gerald Hiner's stock following his demise. The undisputed evidence is that the niece and nephew were preparing to initiate probate proceedings to remove appellant as co-executor of their father's estate in furtherance of their decision to sell the business. It is also undisputed that appellant was neither promised nor offered a job as an employee with the prospective purchaser of the business. The sale of the firm to the new owner ended appellant's status as an employee of Hiner Oils, left him without medical coverage for his heart condition, and resulted in him being retained by the owner as a consultant for only three months when he had previously been vice-president and president of the business.

■ Like the appellant in *Garrett v. Director, supra,* the appellant in this case attempted to resolve his concerns about continued employment without success. He could not convince his niece and nephew to keep the business they inherited. He could not

persuade the purchaser to retain him as an employee. These were certainly legitimate reasons for resigning his positions as president of Hiner Oils and co-executor of the estate of Gerald Hiner. The fact that appellant voluntarily accepted $60,000 in exchange for entering into a covenant not to compete with the new firm and agreed to be a paid consultant with the new firm does not mean that he lacked good cause to give up his job with Hiner Oils. This undisputed proof prevents us from holding that the Board of Review reasonably decided that appellant left his job as president of Hiner Oils voluntarily and without good cause connected with the work.

We reach this decision especially mindful of the purpose behind our unemployment compensation legislation, and the benefits provided thereby. As Judge George Howard wrote in *Wacaster v. Daniels, supra,* unemployment compensation laws were enacted during the Great Depression of the 1930s to provide a reasonable and effective means for the promotion of economic security and to assist financially those employees who are *involuntarily unemployed because of the reduction of an employer's work force due to adverse economic conditions.* These measures are not designed to penalize employers or reward employees, but are designed to promote the common good or general welfare of the State. More particularly, the goal is to provide for employees who are able to work, available for work, but cannot find work.

The Arkansas General Assembly articulated this humane and beneficent purpose by the following statement of legislative intent when the Arkansas Employment Security Law was originally enacted:

> Economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of this State. Involuntary unemployment is therefore a subject of general interest and concern which requires appropriate action by the Legislature to prevent its spread and to lighten its burden which may fall with crushing force upon the unemployed worker and his family. The achievement of social security requires protection against this great hazard of our economic life. This can be accomplished by encouraging employers to provide more stable employment and by the systematic accumulation of funds during periods of employment from which benefits may be paid for periods of

unemployment, thus maintaining purchasing power and limiting the serious social consequences of poor relief assistance.

*See* Ark. Code Ann. § 11-10-102 (Repl. 1996).

■ When we consider this public policy purpose in light of the undisputed evidence concerning the imminent sale of the company for which appellant had worked for twenty-eight years, the fact that appellant would have not only been replaced as president of the business but was not promised employment except as a short-term paid consultant without employee benefits, and the fact that appellant was unemployed after his three-month consultant situation expired following the sale, we are unable to hold that the Board of Review reasonably found that appellant voluntarily left his job as president of Hiner Oils without good cause connected with the work. Therefore, we reverse and remand the case to the Board of Review so that it can award appellant his unemployment benefits.

■ Appellant also argues that the Board of Review erred when it permitted the employer's attorney to testify on behalf of the employer and remain its advocate. While this argument appears to have merit, we are unable to address it because the record does not demonstrate that appellant objected to the testimony by the lawyer. Based on our established position that arguments raised for the first time on appeal will not be considered, we decline to reverse the Board of Review on that ground. *See Hooks v. Pratte*, 53 Ark. App. 161, 920 S.W.2d 24 (1996). However, attorneys for litigants are reminded that Rule 3.7 of the Model Rules of Professional Conduct adopted by our supreme court expressly provides that a lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where the testimony relates to an uncontested issue, the testimony relates to the nature and value of legal services rendered in the case, or disqualification of the lawyer would work substantial hardship on the client. The general rule exists to prevent prejudice to opposing parties and conflict of interest between lawyers and their clients. *Arthur v. Zearley*, 320 Ark. 273, 895 S.W.2d 928 (1995).

Reversed and remanded.

ROBBINS, C.J., and MEADS, J., agree.