SLIP OPINION

# ARKANSAS COURT OF APPEALS

DIVISION I
No. E-14-956

| | | | |
|---|---|---|---|
| CHARLES HOLMES | | **Opinion Delivered** MAY 20, 2015 | |
| | APPELLANT | | |
| V. | | APPEAL FROM THE ARKANSAS BOARD OF REVIEW [NO. 2014-BR-02321] | |
| DIRECTOR, DEPARTMENT OF WORKFORCE SERVICES, and BENT CREEK PARTNERS, LLC | | | |
| | APPELLEES | AFFIRMED | |

## CLIFF HOOFMAN, Judge

Appellant Charles Holmes appeals from the Arkansas Board of Review's (Board) decision, which affirmed and adopted the opinion of the Appeal Tribunal (Tribunal) finding that Holmes was disqualified from receiving unemployment benefits because he was discharged from last work for misconduct connected with the work and because he willfully misrepresented a material fact in filing his initial claim for benefits. On appeal, Holmes argues that he was not discharged for misconduct and that he was instead laid off due to a lack of work. We affirm.

Holmes began working for appellee Bent Creek Partners, LLC (Bent Creek) as a part-time maintenance person in May 2013, and he was discharged in June 2014. Holmes filed a claim for unemployment benefits on June 24, 2014, indicating that his last day of work was on June 12, 2014, and that he was laid off on June 16, 2014, due to a lack of work. Bent Creek responded and contested Holmes's claim, stating that he had been discharged for failing

to show up for work for three days in a row, on June 18, 19, and 20. Holmes was denied unemployment benefits by the Department of Workforce Services (Department) on the basis that he had been discharged from his last work for misconduct connected with the work. The Department also determined that Holmes had willfully made a false statement or misrepresented a material fact when filing his initial claim for benefits. Holmes timely appealed these determinations to the Tribunal, which held a telephone hearing on September 2, 2014.

At the hearing, Holmes testified that he worked an average of between fifty and seventy hours per month for Bent Creek and that he was told to call the employer each morning to find out if he was needed on that day. He stated that his last day of work was on June 20, 2014, and that he was not supposed to return to work until the following Monday, June 23. However, when he phoned Bent Creek on Monday morning, he testified that he was informed by Tamika Pulliam, the manager, that he was being laid off because there was no work for him to do. When Holmes was questioned as to whether he had received a copy of Bent Creek's policy stating that employees were required to call in two hours prior to the start of their scheduled work shift if they were going to be late or absent, Holmes admitted that he had received a copy of the policies. He testified, however, that he had never been late or absent without notifying Bent Creek beforehand, despite several specific incidents that had been reported by Bent Creek in its statements to the Department. With regard to Bent Creek's claim that he had been a "no show" on June 18, 19, and 20 despite Pulliam's attempts to contact him via text or phone call, Holmes denied this; he testified that he had called his

employer on those days but had been notified that there was no work for him. He admitted that his phone may have been disconnected during this time frame but claimed that he had either borrowed someone's phone to call in each morning or had physically checked in with the office, which was near his home.

Following the hearing, the Tribunal affirmed the Department's denial of unemployment benefits under Arkansas Code Annotated sections 11-10-514 and 11-10-519(a)(1) (Supp. 2013). The Tribunal stated that Holmes was aware of Bent Creek's policies with regard to maintaining contact with management and giving notification two hours prior to the start of the workday if he was going to be late or absent. The Tribunal found that Holmes had violated these policies on prior occasions and had been reprimanded, yet he had again been absent from work on June 18, 19, and 20 without notifying Bent Creek. Thus, the Tribunal found that Holmes's action amounted to a willful disregard of a standard of behavior that his employer had a right to expect and that he was discharged for misconduct in connection with the work. The Tribunal further found that Holmes had misrepresented the circumstances of his separation to obtain benefits and that he had therefore willfully misrepresented a material fact in filing his initial claim.

Holmes appealed the Tribunal's decision to the Board, which affirmed and adopted the Tribunal's decision, with one modification to the Tribunal's finding with respect to a date on which Holmes was contacted by his supervisor. The Board's opinion was mailed on October 14, 2014, and Holmes has timely appealed to this court.

On appeal in unemployment cases, findings of fact by the Board are conclusive if

supported by substantial evidence, and review is limited to determining whether the Board could reasonably reach its decision based upon the evidence before it, even if there is evidence upon which the Board might have reached a different decision. *Hiner v. Dir.*, 61 Ark. App. 139, 965 S.W.2d 785 (1998). The reviewing court may not substitute its findings for the Board's, even though the court might have reached a different conclusion had it made an original determination upon the same evidence. *Thomas v. Dir.*, 55 Ark. App. 101, 931 S.W.2d 146 (1996). Also, the credibility of witnesses and the weight to be accorded their testimony are matters to be resolved by the Board. *Johnson v. Dir.*, 84 Ark. App. 349, 141 S.W.3d 1 (2004).

Pursuant to Arkansas Code Annotated section 11–10–514(a), if an individual is discharged from last work for misconduct in connection with the work, the individual is disqualified for benefits until, subsequent to filing a claim, he or she has had at least thirty days of covered employment. An employee's actions constitute misconduct sufficient to warrant denial of unemployment benefits if they deliberately violate an employer's rules, or if they wantonly or willfully disregard the standard of behavior that the employer has a right to expect of its employees. *Thomas, supra.* Mere unsatisfactory conduct, ordinary negligence, or good-faith errors in judgment or discretion are not considered misconduct unless it is of such a degree or recurrence as to manifest wrongful intent or an intentional or substantial disregard of an employer's interests or the employee's duties and obligations. *Id.* Whether an employee's actions constitute misconduct in connection with the work sufficient to deny unemployment benefits is a question of fact for the Board. *Id.*

In addition, under Arkansas Code Annotated section 11-10-519(a)(1) (Supp. 2013), an individual shall be disqualified for benefits if he or she willfully makes a false statement or misrepresentation of a material fact, or willfully fails to disclose a material fact in filing an initial claim or a claim renewal. This disqualification shall continue from the date of filing the claim until the individual has ten weeks of employment in which he or she has earned wages equal to at least the weekly benefit amount. *Id.*

Holmes argues on appeal that he was never told he was fired and that he was instead told that he was laid off due to lack of work. In support of his argument, he points to an affidavit of a co-employee who stated that she and Holmes were informed by Pulliam at Bent Creek that there was no work available during the week of June 16, 2014, and that they were then laid off on June 23, 2014.

Holmes's testimony clearly conflicted with the statements of his employer. We note that Holmes's statements were also inconsistent with each other, as he testified at the hearing that his last day of work was June 16 and that he was notified that he was laid off on June 23; however, his initial claim and other statements to the Department indicated that his last day of work was on June 12 and that he was laid off on June 16. It is for the Board to resolve conflicts in the testimony and to decide matters of credibility. *Johnson*, *supra*; *W.C. Lee Constr. v. Stiles*, 13 Ark. App. 303, 683 S.W.2d 616 (1985). In this case, the Board obviously resolved these conflicts in favor of the employer. Thus, there was substantial evidence to support the Board's finding that Holmes was discharged from his last work for misconduct connected with the work. Furthermore, because the Board found that Holmes was aware

that he had not been laid off due to a lack of work and that he misrepresented the circumstances of his separation when filing his initial claim for benefits, there is also substantial evidence to support the finding that he was disqualified under Arkansas Code Annotated section 11–10–519(a)(1).

Affirmed.

KINARD, J., agrees.

WHITEAKER, J., concurs.

**PHILLIP T. WHITEAKER, Judge, concurring.** I agree with the majority that substantial evidence supports the Arkansas Board of Review's decision. I write separately, however, to express concern about the adversarial tone of the questioning by the hearing officer for the Arkansas Appeal Tribunal.

Under Arkansas Code Annotated section 11–10–526(a)(1) (Repl. 2012), the Appeal Tribunal is not bound by common law or statutory rules of evidence or by technical rules of procedure, but any hearing or appeal before the tribunal shall be conducted in such manner as to ascertain the substantial rights of the parties. Moreover, the Arkansas Code of Judicial Conduct applies to members of the administrative law judiciary. *See* Ark. Code Jud. Conduct Part I.B (Application). "A judge shall uphold and apply the law, and shall perform all duties of judicial office *fairly and impartially*." Ark. Code Jud. Conduct R. 2.2 (2014) (emphasis added).

In this case, I believe that the hearing officer's line of questioning went beyond merely ascertaining the substantial rights of the parties; it became confrontational and

accusatory, taking on the tenor of cross-examination at times. The appellant, Charles Holmes, was the only person to testify, as the employer did not participate in the hearing to present its version of events. On several occasions, however, as Holmes was attempting to explain his absences from work, the hearing officer interrupted him to ask pointed, almost prosecutorial questions, appearing to attempt to discredit him. Although the weight and credibility of the evidence are for the administrative agency to determine, *see Beeson v. Landcoast*, 43 Ark. App. 132, 862 S.W.2d 846 (1993), the fact-finder must be careful not to take on the role of an adversary in considering and assessing that evidence.

Under section 11-10-526(a)(1), unless the hearing is conducted in such a way as to make it impossible to ascertain the substantial rights of the parties, we cannot properly reverse on procedure. *See Stagecoach Motel v. Krause*, 267 Ark. 1093, 593 S.W.2d 495 (Ark. App. 1980). Because it is not "impossible" in this case to ascertain the rights of the parties, this court's decision to affirm is the correct one. I would simply caution all hearing officers in this state to be mindful that they must be impartial arbiters, not prosecutors.

*Charles Holmes*, pro se appellant.

*Phyllis Edwards*, for appellee.