

# ARKANSAS COURT OF APPEALS

DIVISION II
No. E-14-925

| | | |
|---|---|---|
| TIMOTHY CLARK | | **Opinion Delivered** September 16, 2015 |
| | APPELLANT | |
| V. | | APPEAL FROM THE ARKANSAS BOARD OF REVIEW [NO. 2014-BR-02501] |
| DIRECTOR, DEPARTMENT OF WORKFORCE SERVICES, and GREATER RIVER MEDICAL CENTER | | |
| | APPELLEES | AFFIRMED |

## CLIFF HOOFMAN, Judge

Appellant Timothy Clark appeals from an order of denial of application for appeal mailed by the Arkansas Board of Review (Board) on October 15, 2014, in favor of appellees, Director, Department of Workforce Services (Department), and Greater River Medical Center (Greater River). On appeal, appellant's sole contention is that the Board's decision was contrary to the facts and the law and not supported by substantial evidence. We affirm.

Appellant had been employed by Greater River Medical Center for approximately seven years as a maintenance person prior to his termination on August 5, 2014. After he applied for unemployment-compensation benefits, the Department issued a "Notice of Agency Determination" on August 27, 2014, denying benefits pursuant to Arkansas Code Annotated section 11-10-514 (Supp. 2013) on finding that appellant was discharged from his last work for misconduct in connection with the work. Appellant appealed the decision to

SLIP OPINION

the Arkansas Appeal Tribunal (Tribunal), and a telephone hearing was held on September 24, 2014.

At the hearing, Cheri Blurton, Human Resource Director for Greater River, testified that appellant was discharged by Greater River's CEO, Ralph Beaty, and her because he engaged in some "threatening behavior" and made some "threatening remarks" in reference to a coworker. She further explained that on August 1, 2014, appellant was involved in a scuffle with Ron Lucius, a painter for Greater River. After the scuffle, Beaty met with appellant and Lucius, and Beaty told appellant that he was giving him a final warning before terminating him. At that meeting, appellant stated, "I'm glad you're sharing this with me because if anything more happens, I do have a knife in my pocket and I will use it." Beaty specifically informed appellant not to repeat his statements and that he was overlooking them that time. However, Blurton explained that appellant subsequently repeated his statements to other coworkers and again to Blurton. Blurton specifically testified that appellant told her that "if I'm cornered by Mr. Lucius, I will pull out my knife out of my pocket and I will use it." She explained that appellant's repetition of the threatening statements after being informed not to repeat them led to appellant's termination.

Appellant denied that he had made any threatening statements at the hearing and argued that he had been wrongfully terminated. He admitted that Lucius pushed him on August 1, 2014, and that he pushed him back. That said, appellant explained that he did not know why Lucius reacted the way he did toward him. Furthermore, appellant testified that he carried a knife in his pocket for his job and that the majority of other maintenance workers

2

SLIP OPINION

carried one also.

After the hearing, the Tribunal affirmed the Department's decision to deny benefits. The Tribunal specifically found the following in pertinent part:

> The claimant, who believed he was attacked without provocation, had a basis for being upset with a co-worker. The claimant carried a knife to assist him with his job. Based upon the sworn testimony provided by the employer, the claimant's admission that he was upset with the co-worker, and the additional testimony about the statement's being initially made to the CEO and then co-workers, it is found that the claimant made the threatening statement which led to his discharge. The conduct was willfully engaged in and it was against the employer's best interests. Therefore, the claimant was discharged from last work for misconduct in connection with the work.

Appellant timely appealed to the Board. However, the Board mailed an order of denial of application for appeal pursuant to Arkansas Code Annotated section 11-10-525 (Repl. 2012), and the Tribunal's decision was deemed to be the decision of the Board for purposes of judicial review. This appeal followed.

Appellant's sole contention is that the Board's decision was contrary to the facts and the law and not supported by substantial evidence. Specifically, appellant argues that he did not threaten his coworker or employer. Instead, he argues that he sought management's help in keeping his coworker from attacking him and that his conduct did not rise to misconduct under the statute. We disagree.

In unemployment cases, findings of fact by the Board are conclusive if supported by substantial evidence, and substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Holmes v. Dir.*, 2015 Ark. App. 337, 463 S.W.3d 744; *Ivy v. Dir.*, 2013 Ark. App. 381. We review the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Board's findings, and even

SLIP OPINION

when there is evidence on which the Board might have reached a different decision, the scope of our judicial review is limited to a determination of whether the Board could have reasonably reached its decision on the evidence before it. *Ivy*, *supra*. This court may not substitute its findings for the Board's, even though this court might have reached a different conclusion had it made the original determination on the same evidence. *Holmes*, *supra*. Furthermore, the credibility of witnesses and the weight to be afforded their testimony are matters to be resolved by the Board. *Id*.

Pursuant to Arkansas Code Annotated section 11–10–514(a), if an individual is discharged from last work for misconduct in connection with the work, the individual is disqualified from benefits until, subsequent to filing a claim, he or she has had at least thirty days of covered employment. Section 11–10–514(a) further provides in part,

(2) In cases of discharge for absenteeism, the individual shall be disqualified for misconduct in connection with the work if the discharge was pursuant to the terms of a bona fide written attendance policy, regardless of whether the policy is a fault or no-fault policy.

(3)(A) Misconduct in connection with the work includes the violation of any behavioral policies of the employer as distinguished from deficiencies in meeting production standards or accomplishing job duties, and
(B) Without limitation:
(i) Disregard of an established bona fide written rule known to the employee; or
(ii) A willful disregard of the employer's interest.

(4)(A) Misconduct in connection with the work shall not be found for instances of poor performance unless the employer can prove that the poor performance was intentional.
(B) An individual's repeated act of commission, omission, or negligence despite progressive discipline constitutes sufficient proof of intentional poor performance.
(C) An individual who refuses an alternate suitable job rather than being terminated for poor performance shall be considered discharged for misconduct in connection with the work.

This court has consistently stated that an employee's actions constitute misconduct sufficient to warrant denial of unemployment benefits if they deliberately violate an employer's rules or if they wantonly or willfully disregard the standard of behavior that the employer has a right to expect of its employees. *Holmes*, *supra*. Mere unsatisfactory conduct, ordinary negligence, or good-faith errors in judgment or discretion are not considered misconduct unless it is of such a degree or recurrence as to manifest wrongful intent or an intentional or substantial disregard of an employer's interests or the employee's duties and obligations. *Id*. Whether an employee's actions constitute misconduct in connection with the work sufficient to deny unemployment benefits is a question of fact for the Board. *Id*.

Although appellant disputed the fact that he made threatening statements, the Board resolved the conflicting evidence by affording the employer's testimony greater weight, as it was within its province to do. *Holmes*, *supra*. Appellant continued to repeat the threatening statements concerning a coworker despite being specifically told by the CEO that he would be terminated if he did so. Appellant deliberately violated the employer's rules and willfully disregarded the employer's interest when he repeated his threatening statements to Blurton and other coworkers after being warned by management. Therefore, the Board reasonably reached its decision based on the evidence before it. Accordingly, substantial evidence supports the Board's findings, and we affirm its denial of unemployment benefits.

Affirmed.

GLADWIN, C.J., and WHITEAKER, J., agree.

*Bill E. Bracey, Jr., ESQ*, for appellant.
*Phyllis Edwards*, for appellee.