
# ARKANSAS COURT OF APPEALS

DIVISION II
No. E-17-3

| | |
|---|---|
| SHARON MCCULLER-SILVERMAN<br>APPELLANT<br><br>V.<br><br><br>DIRECTOR, DEPARTMENT OF<br>WORKFORCE SERVICES, AND<br>TRINITY VILLAGE, INC.<br>APPELLEES | **Opinion Delivered:** November 8, 2017<br><br>APPEAL FROM THE ARKANSAS<br>BOARD OF REVIEW<br>[NO. 2016-BR-01705]<br><br><br><br><br>AFFIRMED |

## KENNETH S. HIXSON, Judge

Appellant, Sharon McCuller-Silverman, appeals from an order mailed by the Arkansas Board of Review (Board) on December 7, 2016, denying the claimant benefits in favor of appellees, Daryl Bassett, director of the Department of Workforce Services (Department), and Trinity Village, Inc. (Trinity Village). On appeal, appellant's arguments can be summarized as (1) the Board exceeded its authority and abused its discretion in reviewing the decision of the Arkansas Appeal Tribunal (Tribunal), (2) substantial evidence does not support the Board's findings, and (3) the Tribunal's decision that appellant should repay benefits that were paid to her was premature and unfounded. We affirm.

Appellant was employed by Trinity Village as an administrator for assisted living prior to her termination. After she applied for unemployment-compensation benefits, Trinity Village filed a statement that appellant had been discharged for insubordination, specifically stating the following:

1. A#54[1] Ms. Silverman not only failed to promptly initiate the protocols and actions necessary to address the deficiencies from the May 2–4, 2016 Assisted Living survey, but on 6/27/2016 refused to complete and sign the plan of correction. This is the Administrator's responsibility.

2. A#57 As Assisted Living Administrator, it is Ms. Silverman's responsibility to review, monitor, and utilize her departmental financial and budget reports as a primary tool in the management of her area. On 6/22/2016 she stated to me that they did not make sense to her and did not tell her anything, so she puts them straight in the shredder. I have personally instructed her in the interpretation and use of these reports on numerous occasions.

3. B#37 Ms. Silverman informed at least one staff member of the fiscal year end unaudited net income of Trinity Village. It was made clear by me in the staff meeting with only department managers, during which she was present that this was not to be repeated outside the meeting. Ms. Silverman also informed the same staff member as well as at least one additional staff member that she had a meeting with another manager where the manager shook her finger in her face. This is a confidential personnel issue that should not have been discussed.

4. A#34 Ms. Silverman exhibited anger and even hostility to a nurse aide in her department when discussing a possible worker's compensation injury. She was confrontational and exhibited a lack of good judgment in dealing with a sensitive issue.

5. B#23 With no proof, Ms. Silverman has stated to me and at least one other employee that another Trinity Department Manager "slashed her tires." This is a malicious statement with no substantiation.

6. B#34 Ms. Silverman frequently handles herself in an argumentative, accusatory, unprofessional manner with fellow managers as well as the assisted living staff, thus creating an unacceptable and frequently hostile environment.

Appellant also filed a statement. In her statement, appellant denied that she was fired for insubordination. Instead, she claimed the following:

I know they said I was fired for refusal to do an action plan but that is not true, the executive director told me that she was going to write it. She did tell me in the future that she wanted the administrators to write them from now on and I told her I would be hap[p]y to. I had a supervisor threaten me and yell and point her finger

---

[1]A#54, A#57, B#37, A#34, B#23, and B#34 are references to the paragraphs in the employee handbook that appellant allegedly violated by the conduct described.

in my face. It cause[d] me to have an anxiety attack. My blood pressure spiked and my Dr[.] put me on a new anxiety medication and bp medication. I went to EEOC due to the supervisor threatening me. I did it for my own protection. My Doctor put me off work through 07/11/16. I went back to work on the 11th was there for 30 minutes and was called into the conference room, with Donna Stone and their attorney. Donna told me I was being terminated due to insubordination and I said for what. I didn't do anything. Then the attorney told me they would offer me 3 months of severance plus a neutral reference in exchange for my resignation. I did not accept their offer. They gave me a whole list of stuff I supposedly did but not a bit of it was true. I still believe I was discharged in retaliation for filing an EEOC charge.

The Department found that appellant was not disqualified from receiving benefits in a Notice of Agency Determination mailed on August 24, 2016. Trinity Village timely appealed that decision to the Tribunal, and a telephone hearing was held on October 17, 2016.

At the hearing, Lea Reed testified that she was an RN consultant at Trinity Village and that appellant was her immediate supervisor. Reed recalled a meeting in which the executive director, Donna Stone, discussed the financial situation of Trinity Village with Reed and appellant present. Despite Stone's instruction that the information was confidential, appellant subsequently discussed the employer's specific profits and losses with Margie Smith and Reed. Smith was not present at the prior staff meeting.

Reed further testified that the Office of Long Term Care found deficiencies during an audit. The deficiencies needed to be corrected, and a plan of correction needed to be submitted to the Office of Long Term Care. Reed testified that during the meeting about the deficiencies, Stone stated that she would assist April Boosier, the dietary manager, with correcting the deficiencies. Reed did not recall whether anything was said about who would prepare the plan of correction. However, Reed testified that she was in appellant's office

when appellant received a call from Stone. According to Reed, Stone had instructed appellant to prepare the plan of correction, but appellant refused.

Phyllis Offut, an LPN employed at Trinity Village, testified that appellant had told her that she thought she was in charge of the plan of correction. Appellant additionally told Offut that she was not going to complete it. Appellant further told Offut that Boosier would have to complete the plan of correction.

Stone testified that appellant was responsible for reviewing and understanding monthly financial reports. However, during one conversation, appellant told Stone that she did not understand them and would simply shred them each month. Stone additionally testified that she had discussed confidential information in a managerial-staff meeting and specifically instructed that the information not be discussed outside that meeting. However, Reed informed Stone that appellant had subsequently discussed the information with Smith present.

Stone further testified that another one of appellant's job responsibilities was to complete a plan of correction when deficiencies are discovered. Appellant had prepared and signed a previous plan of correction in 2015. During the meeting regarding the recent deficiencies, Stone stated that she would assist Boosier with correcting the deficiencies, but Stone did not state that she would prepare the plan of correction. In a telephone conversation on June 27, 2016, Stone inquired how appellant was doing with preparing the plan. However, appellant stated that she was not going to prepare the plan and further refused to do so after Stone had instructed appellant to prepare the plan. Stone testified that appellant's actions were in violation of Trinity Village's written policy. Appellant was

SLIP OPINION

medically excused from work from June 28, 2016, through July 11, 2016. During that time, appellant filed an EEOC complaint, and appellant was discharged the day she returned to work.

Appellant did not testify at the hearing. Smith testified on appellant's behalf. Smith testified that she had recalled that Stone and Boosier had agreed to prepare the plan of correction at the meeting regarding the deficiencies.

The Tribunal mailed a written decision affirming the Department's decision to award benefits on October 20, 2016, and Trinity Village timely appealed to the Board. The Board did not accept any additional evidence. The Board reversed the Tribunal's decision. After summarizing the evidence presented at the hearing before the Tribunal, the Board specifically found that

> [i]n this instance, Reed testified that the claimant discussed confidential financial information of the employer in the presence of an employee who was not present in a meeting discussing the financial information, despite being told not to discuss the information. Additionally, both Stone and Reed testified that the claimant had a phone conversation with Stone on June 27, 2016, in which Stone asked about the status of the Plan of Correction, told the claimant to complete the Plan of Correction, and was told by the claimant that she would not complete the plan. Stone indicated that preparing the plan was one of the claimant's job duties as administrator. Further, the claimant completed and signed the Plan of Correction for the employer in 2015. Although Margie Smith testified that she believed that Stone told the claimant in a meeting that she and April Boosier would prepare the plan, the Board does not find this testimony to be more persuasive than the testimony of Stone and Reed. Stone did testify that she told Boosier she would assist her with correcting the deficiencies during the meeting, but that she did not state that she would prepare the plan. Although the claimant indicated in her statements to the Department that she was not told to prepare the plan and that she was discharged due to retaliation for an EEOC claim, the claimant did not provide any testimony at the hearing, and as such did not provide sufficient evidence to show that she was discharged for any other reason than what was stated by the employer. Therefore, the most credible testimony that the Board has to consider is the first-hand testimony of Stone and Reed. Pursuant to the testimony of Stone that one of the claimant's job responsibilities was preparing the Plan of Correction and that the claimant prepared the plan in 2015,

and Stone and Reed's testimony that the claimant was instructed to prepare the plan and refused, the Board finds it more likely than not that the claimant was responsible for preparing the plan and did not prepare it although instructed to do so by Stone. The claimant's failure to prepare the plan was a violation of the employer's policy and constituted insubordination. Therefore, the decision of the Appeal Tribunal in Appeal No. 2016-AT-07387 is reversed on finding that the claimant was discharged from last work for misconduct in connection with the work on account of insubordination.

This appeal followed.

On appeal, appellant first argues that the Board exceeded its authority or abused its discretion in reviewing the Tribunal's decision. However, appellant's arguments lack merit. Arkansas Code Annotated section 11-10-525 (Repl. 2012) permits the Board to review a decision as follows:

(a) An appeal filed by any party shall be allowed as of right if the determination was not affirmed by the appeal tribunal.

(b) The Board of Review, *on its own motion and within the time specified in § 11-10-524, may initiate a review of the decision of an appeal tribunal* or determination of a special examiner *or may allow an appeal from the decision on application filed within the time by any party entitled to notice of the decision.*

(c)(1) Upon review on its own motion or upon appeal and on the basis of evidence previously submitted in the case, or upon the basis of any additional evidence as it may direct be taken, the board may affirm, modify, reverse, dismiss, or remand the case.

(Emphasis added.) We conclude that the Board was entitled to review the Tribunal's decision in the case before us under subsection (b).

Next, appellant argues that substantial evidence does not support the Board's findings. She more specifically argues that Trinity Village failed to establish misconduct or present any other evidence showing that the Tribunal's decision was in error. She further argues

that the Board's decision was not supported by the law or relevant evidence that a reasonable person might accept as adequate to support its conclusion. We disagree.

In unemployment cases, findings of fact by the Board are conclusive if supported by substantial evidence, and substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Holmes v. Dir.*, 2015 Ark. App. 337, 463 S.W.3d 744; *Ivy v. Dir.*, 2013 Ark. App. 381. We review the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Board's findings, and even when there is evidence on which the Board might have reached a different decision, the scope of our judicial review is limited to a determination of whether the Board could have reasonably reached its decision on the evidence before it. *Ivy*, *supra*. This court may not substitute its findings for the Board's, even though this court might have reached a different conclusion had it made the original determination on the same evidence. *Holmes*, *supra*. Furthermore, the credibility of witnesses and the weight to be afforded their testimony are matters to be resolved by the Board. *Id*.

Pursuant to Arkansas Code Annotated section 11-10-514(a) (Supp. 2015), if an individual is discharged from last work for misconduct in connection with the work, the individual is disqualified from benefits until, subsequent to filing a claim, he or she has had at least thirty days of covered employment. Section 11-10-514(a) further provides in part,

> (3)(A) *Misconduct in connection with the work includes* the violation of any behavioral policies of the employer as distinguished from deficiencies in meeting production standards or accomplishing job duties, and
>
> (B) *Without limitation*:
>     (i) *Disregard of an established bona fide written rule known to the employee*; or
>
>     (ii) A willful disregard of the employer's interest.

(Emphasis added.)

Misconduct includes the violation of any behavioral policies of the employer, disregard of the employer's rules, disregard of the standards of behavior that the employer has a right to expect from its employees, and disregard of the employee's duties and obligations to his or her employer. *Zenaro v. Dir.*, 2017 Ark. App. 290, 521 S.W.3d 164. Mere unsatisfactory conduct, ordinary negligence, or good-faith errors in judgment or discretion are not considered misconduct unless it is of such a degree or recurrence as to manifest wrongful intent or an intentional or substantial disregard of an employer's interests or the employee's duties and obligations. *Whitmer v. Dir.*, 2017 Ark. App. 367, 525 S.W.3d 45. It is the employer's burden to establish misconduct by a preponderance of the evidence. *Id.* There is an element of intent associated with a determination of misconduct. *Id.* When the employer has no written policy or fails to follow its written policy, then the facts must be evaluated to determine whether the employee's behavior was a willful disregard of the employer's interest. *Id.* Whether an employee's actions constitute misconduct in connection with the work sufficient to deny unemployment benefits is a question of fact for the Board. *Id.*

Here, there was evidence presented by the employer that appellant had divulged confidential information despite having been instructed not to do so and that appellant had refused to prepare a plan of correction despite having been told to do so. Although Margie Smith testified that she believed that Stone told appellant in a meeting that she and April Boosier would prepare the plan, the Board specifically found Stone's and Reed's testimony more persuasive. It is within the Board's province to resolve conflicting evidence. *See Clark*

*v. Dir.*, 2015 Ark. App. 491, 469 S.W.3d 808. The Board further found that the "most credible testimony" that it had to consider was Stone's and Reed's first-hand testimony. Stone testified that one of appellant's job responsibilities was to prepare a plan of correction and that appellant had prepared a plan in 2015. Both Stone and Reed testified that appellant was specifically told to prepare the plan in 2016 but that appellant refused. Misconduct includes, without limitation, the "[d]isregard of an established bona fide written rule known to the employee"; here, the employer presented evidence that insubordination was specifically prohibited in the employer's written policy. Ark. Code Ann. § 11-10-514(a). Thus, we conclude that reasonable minds could have reached the same decision as that of the Board and that the Board's decision is therefore supported by substantial evidence. Accordingly, we affirm appellant's denial of unemployment benefits.

Finally, appellant argues that the Tribunal's separate finding em dash that she should repay benefits (em dash) was premature and should be reversed by this court. However, this decision, if it does exist, is not properly before us at this time. Repayment of benefits was not addressed in either the Tribunal's or the Board's decision before us, and any separate determination would be the subject of a separate appeal from that decision. *See generally Holloway v. Dir.*, 2012 Ark. App. 635; *Ziegler v. Dir.*, 2012 Ark. App. 595. Therefore, we do not address these arguments in this appeal.

Affirmed.

GRUBER, C.J., and MURPHY, J., agree.

*Cross & Kearney, PLLC*, by: *Jesse L. Kearney*, for appellant.

*Phyllis Edwards*, for appellee.