

SLIP OPINION

# ARKANSAS COURT OF APPEALS

DIVISION I
No. E-15-53

| | |
|---|---|
| | **Opinion Delivered** June 17, 2015 |
| CASSIE JOHNSON<br><br>APPELLANT<br><br>V.<br><br>DIRECTOR, DEPARTMENT OF WORKFORCE SERVICES AND ARKANSAS DEPARTMENT OF CORRECTION<br><br>APPELLEES | APPEAL FROM THE ARKANSAS BOARD OF REVIEW<br>[NO. 2014-BR-03024]<br><br><br><br>REVERSED AND REMANDED |

## BRANDON J. HARRISON, Judge

Cassie Johnson appeals the Arkansas Board of Review's decision to deny her unemployment benefits. Johnson missed three days of work after being out on workers' compensation leave for a work-related injury for almost a year and was discharged as a result. The issue is whether Johnson's absence was misconduct.

I.

Johnson worked as a security corporal with the construction division of the Arkansas Department of Correction from 8 December 2003 until 23 September 2014, when she was discharged. The circumstances surrounding the discharge were discussed before the Appeal Tribunal during a hearing in December 2014. A summary of the testimony goes this way. Johnson said that she injured her back at work in July 2013 and took workers' compensation leave in August 2013. She took FMLA leave from 1 January 2014 until 25 March 2014; she then went back to workers' compensation leave, which

SLIP OPINION

she remained on until the Department of Correction discharged her on 23 September 2014.

Shortly before her discharge, Johnson's treating doctor at The Spine Clinic sent word to the Public Employee Claims Division that she was being released from treatment. Johnson stated that she was never informed that her treating doctor had officially released her to work. She stated that she didn't know that she had been released to return to work until after she had already been terminated. Johnson contacted human resources on September 24 because her workers' compensation check "wasn't the right amount." That is when she was "advised that [her] termination letter was in the mail." Johnson also testified that

> on the 24th is when I found out that I was released to go back to work, and then that's when I called the doctor's office to try to clarify because I wouldn't—I didn't know, so when I did find out, I did go back up there even after I was terminated to try and get the job essential form filled out because I knew I had to have that to return to work, and [my doctor] was out of the country and he couldn't fill it out until the 15th of the next month.

Her bottom line appears to be that she was guided by "the FMLA paperwork that says that you have to have [the job essential form] to return to work" and she never received one.

Stefanie Glasscock, a payroll administrator, appeared on behalf of the employer and said that Johnson was discharged because she was released from workers' compensation on 17 September 2014 and failed to call her supervisor or appear for work on September 18, 19, or 22. According to Glasscock, Johnson violated Conduct Code 1233, 4E; and "if an employee fails to call or report to supervisor for three working days," then her



employment may be terminated. Glasscock also said that the Department of Correction allows employees to "ride their leave out" until a doctor releases them to work.

Johnson did not have an expected return date. Instead, the Department of Correction employs a "worker's comp employee" who maintains contact with employee physicians through the Public Employee Claims Division. The Spine Clinic that treated Johnson communicates with the Department of Correction through the Public Employee Claims Division.

Throughout her leave, Johnson admittedly did not maintain regular contact with her supervisor, or any other employee of the Department of Correction. On the other hand, Glasscock stated: "we don't have anything that specifically says you have to call and check in every week or every month or anything; we kept up with her through the Public Employee's Claims Division."

## II.

In this case the Appeal Tribunal's decision, which the Board of Review adopted, stated that Johnson violated Ark. Code Ann. § 11-10-514(a) because she "had obligations to contact the employer to inform them of results of seeing the doctor and knowing whether she would be released to work. Her failure to do so was a willful disregard of the employer's interest." The Department of Correction must prove misconduct by a preponderance of the evidence. *Grigsby v. Everett*, 8 Ark. App. 188, 191, 649 S.W.2d 404, 406 (1983). The relevant statute, Ark. Code Ann. § 11-10-514(a) (Repl. 2012), provides in part:

> (2) In cases of discharge for absenteeism, the individual shall be disqualified for misconduct in connection with the work if the discharge was pursuant



to the terms of a bona fide written attendance policy, regardless of whether the policy is a fault or no-fault policy.

(3)(A) Misconduct in connection with the work includes the violation of any behavioral policies of the employer as distinguished from deficiencies in meeting production standards or accomplishing job duties, and

(B) Without limitation:

(i) Disregard of an established bona fide written rule known to the employee; or

(ii) A willful disregard of the employer's interest.

We have consistently defined misconduct to require "more than mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies, ordinary negligence in isolated instances, or good-faith errors in judgment or discretion." *Pacheco v. Dir., Employment Sec. Dep't*, 92 Ark. App. 122, 123, 211 S.W.3d 569, 571 (2005). "[A]n intentional and deliberate violation, a willful and wanton disregard, or carelessness or negligence of such a degree or recurrence as to manifest wrongful intent or evil design" must be proven. *Id.* Whether an employee's conduct is misconduct is a question of fact for the Board of Review. *Garrett v. Dir., Dep't of Workforce Servs.*, 2014 Ark. 50. We view all inferences in the light most favorable to the Board's findings and affirm if the decision is supported by substantial evidence. *Id.* We only ask whether the Board could have reasonably reached its decision based on the evidence presented. *Id.* But we do not "rubber stamp" its decisions. *Clark v. Dir., Employment Sec. Dep't*, 83 Ark. App. 308, 311, 126 S.W.3d 728, 730 (2003).

### III.

The Board's decision in this case is unreasonable. There is no evidence that Johnson "intentionally violated the rules so as to manifest wrongful intent or evil design." *Walls v. Dir., Employment Sec. Dep't*, 74 Ark. App. 424, 427, 49 S.W.3d 670, 672 (2001).

According to the employer's own testimony, a treating doctor contacts the Public Employee Claims Division directly when an employee is released to work. No evidence was presented that Johnson's treating doctor, or the Department of Correction, told Johnson what to do, or what process she must follow, when released to work. More to the point, there was no evidence that Johnson was in fact told that she had been released.

True, Glasscock stated that Johnson should have known that she should return to work that Thursday because "her regular days are Monday through Friday[.]" But that presumes Johnson knew she had been released in the first place. Johnson's treating doctor's office did not provide Johnson, herself, with a release paper; moreover, there was testimony that Johnson's treating doctor had mentioned a surgical referral. Even the Board candidly observed that "there may have been a misunderstanding on the claimant's part[.]"

This case boils down to a single misunderstanding between Johnson and the Department of Correction—the sort of miscue that does not justify the denial of benefits. The Board's denial is therefore reversed and the case remanded for an award of benefits.

Reversed and remanded.

KINARD and GLOVER, JJ., agree.

*Cassie Johnson*, pro se appellant.

*Phyllis Edwards*, Associate General Counsel, for appellee.