Cite as 2022 Ark. App. 280

# ARKANSAS COURT OF APPEALS
DIVISION I
No. E-21-563

| | |
|---|---|
| JOHN GIERINGER<br>APPELLANT<br><br>V.<br><br>DIRECTOR OF ARKANSAS<br>EMPLOYMENT SERVICES DIVISION<br>AND GREENWAY EQUIPMENT, INC.<br>APPELLEES | OPINION DELIVERED JUNE 1, 2022<br><br>APPEAL FROM THE ARKANSAS<br>BOARD OF REVIEW<br>[NO. 2021-BR-02277]<br><br><br><br>AFFIRMED |

**ROBERT J. GLADWIN, Judge**

John Gieringer appeals from the Arkansas Board of Review's August 25, 2021 denial of his unemployment claim on the basis that he was discharged from work for misconduct connected to his work. Ark. Code Ann. § 11-10-514. On appeal, Gieringer argues that the decision is not supported by substantial evidence and that the presence of multiple similar incidents does not equate to misconduct. We affirm.

From February 10 to October 22, 2020, Gieringer worked for Greenway Equipment, Inc. (Greenway), as a service technician. He was discharged from employment for excessive tardiness; thereafter, he applied for unemployment insurance benefits. On his claimant's statement to the Division of Workforce Services, Gieringer indicated that he was discharged for being late on the day he was discharged, October 23, 2020. On the employer's statement

in response, Greenway indicated that Gieringer was discharged for tardiness and that his being late was the final incident causing discharge. Greenway stated that Gieringer had been late thirty-four times since July 1 and that his reasons included sickness, oversleeping, or heavy traffic, and sometimes there were no reasons given. Greenway attached to its response the manager's list of dates Gieringer was tardy and two disciplinary notices dated April 22, 2020, and June 1, 2020.

Gieringer's unemployment application was denied, and he filed a petition for appeal with the Arkansas Appeal Tribunal. On May 21, 2021, a telephonic hearing was held, and Todd Thompson, controller for Greenway, testified that Gieringer's employment ended because of his excessive absences and tardiness. He confirmed that Gieringer had been late or absent from work roughly twenty times between March 3 and October 23. Ben Adams, location manager for Greenway, testified that Gieringer was ultimately discharged for excessive tardiness and that Gieringer had been counseled on April 22, June 1, July 16, July 31, and August 4.

Gieringer testified, "Ben manipulated my timecard and changed my times around, and put me down as being late. I wasn't late on most of the times that I was—I'm being accused of being late." He said that he was not alleging that he had never been late, and the hearing officer asked him how it could be determined on which dates he was late. Gieringer said,

> Well, on 10/21, I had a meeting with Ben and Mike Osier, which is the Regional Manager, about all the changes that had been being made to my timecard, and because that was effectively taking money out of my pocket. There were days that I

2

would work late, and my timecard would show that I'd clocked out early, and this happened several times. So, I raised the issue and we had a meeting about this on 10/21, and the next – and Mike Osier, the last thing that was said to me in that meeting was, my job is safe, that he's going to figure out what's going on with my timecard, and he's going to let me know what – what's going on. . . . I was fired the very next day.

The Appeal Tribunal affirmed the Division's decision to deny Gieringer unemployment benefits:

> The claimant was discharged for having violated the employer's written attendance policy. The claimant has not shown that the employer misapplied its policy, and the preponderance of the evidence thus suggests that the claimant was discharged pursuant to the terms of a bona fide written attendance policy within the meaning of Ark. Code Ann. § 11-10-514(a)(2). While the claimant alleges that his timecard was altered by his employer, he offered no substantiation. Therefore, the claimant was discharged from last work for misconduct in connection with the work.

Gieringer appealed to the Arkansas Board of Review, which affirmed and adopted the Appeal Tribunal's decision. Thereafter, Gieringer filed a timely petition with this court.

Our standard of review is well settled:

> On appeal of an unemployment-compensation case, we review the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Board's findings. *Jones v. Dir.*, 2019 Ark. App. 341, 581 S.W.3d 516. The Board's findings of fact are conclusive if supported by substantial evidence. *Id.* Substantial evidence is evidence a reasonable mind might accept as adequate to support a conclusion. *Id.* Appellate review is limited to determining whether the Board could reasonably reach its decision based on the evidence before it, even if there is evidence on which the Board might have reached a different decision. *Higgins v. Dir.*, 2016 Ark. App. 449, 503 S.W.3d 833. The reviewing court may not substitute its findings for the Board's, even though the court might have reached a different conclusion had it made an original determination on the same evidence. *Id.* Also, the credibility of witnesses and the weight to be accorded their testimony are matters to be resolved by the Board. *Id.*

> Misconduct includes the violation of any behavioral policies of the employer, disregard of the employer's rules, disregard of the standards of behavior that the

3

employer has a right to expect from its employees, and disregard of the employee's duties and obligations to his or her employer. *Hopkins v. Dir.*, 2019 Ark. App. 84, 571 S.W.3d 524. It is the employer's burden to establish misconduct by a preponderance of the evidence. *Id.* Whether an employee's behavior is misconduct that justifies the denial of unemployment benefits is a question of fact for the Board to decide. *Id.* There is an element of intent associated with a determination of misconduct. *Id.*

*Bright v. Dir.*, 2021 Ark. App. 217, at 2–3, 625 S.W.3d 720, 722.

Gieringer argues that the Board's decision is not supported by substantial evidence because Greenway did not prove that he intended to act in a way that amounts to misconduct. *Grigsby v. Everett*, 8 Ark. App. 188, 649 S.W.2d 404 (1983). He relies on an unpublished case, *Harris v. Director*, E02-312 (Ark. App. June 18, 2003) (unpublished), wherein this court affirmed the Board's finding that the employee followed what she believed to be the correct protocol for notifying her employer that she would be absent as it pertained to her employer's written work policy. Gieringer argues that the record contains no written policy on the protocol for absenteeism and tardiness. *See Rucker v. Price*, 52 Ark. App. 126, 915 S.W.2d 315 (1996). He contends that he was under the impression he was fired for his questions about his timecard and that Greenway produced no evidence in the hearing with the Appeal Tribunal to support the determination that he acted intentionally when he was late for work on any date. He claims that Greenway did not bring forth any evidence portraying that his tardiness was an intentional disregard of its interest or an intentional violation of its rules.

Gieringer also argues that the presence of multiple instances of being late does not equate to misconduct. *Clark v. Dir.*, 83 Ark. App. 308, 126 S.W.3d 728 (2003) (holding that

4

an employee truck driver's multiple involvements in truck accidents did not prove intent). Like the employee in *Clark*, Gieringer claims that he was late "ever since he began working at Greenway." Thus, he claims, he never proved he has the ability to consistently be on time to work, thereby eliminating the intentional aspect.

The record reflects that Gieringer was employed with Greenway for about eight months, and during that time, he signed a written warning due to excessive tardiness on April 22, 2020. The warning stated that Gieringer had been verbally counseled regarding his tardiness on two prior occasions. Gieringer then received a warning on June 1, 2020, for further excessive tardiness. The warning stated that Gieringer would be terminated if he did not correct his behavior, and he signed the warning. He continued to report to work late for various reasons, and he was discharged from his employment on October 23, 2020. Greenway reported that Gieringer was either tardy or absent over thirty times during his eight months of employment. It is clear from the record that Gieringer was discharged for misconduct connected with his work when he was repeatedly late for work. On his written statement to the Division, Gieringer indicated that he was late on the day of his discharge, and there was no evidence presented that he was discharged for any other reason than excessive tardiness. Accordingly, we affirm.

Affirmed.

BARRETT and MURPHY, JJ., agree.

*Center for Arkansas Legal Services*, by: *Jay P. Coleman*, for appellant.

*Jennifer Janis*, for separate appellee Director, Arkansas Division of Workforce Services.

5