Cite as 2022 Ark. App. 429

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. E-21-784

| | | |
|---|---|---|
| GARY ROACH | | Opinion Delivered October 26, 2022 |
| | APPELLANT | |
| V. | | APPEAL FROM THE ARKANSAS BOARD OF REVIEW [NO. 2021-BR-02991] |
| DIRECTOR, DIVISION OF WORKFORCE SERVICES; AND 168 FARMS, INC. | | |
| | APPELLEES | AFFIRMED |

**KENNETH S. HIXSON, Judge**

This is an unemployment-compensation case.  Appellant Gary R. Roach worked for

appellee 168 Farms, Inc., which is a general farming operation that plants and harvests

various crops.  Roach was hired on November 18, 2019, and his employment ended on June

1, 2020.

The controversy in this litigation is whether Roach voluntarily quit his work or was

discharged by the employer.  The employer, 168 Farms, contends that Roach quit, and Roach

contends that he was discharged.

Roach filed for unemployment benefits based on his claim that he was discharged for

reasons other than misconduct connected with the work.  The Division of Workforce

Services issued an agency determination allowing Roach benefits under Ark. Code Ann.

§ 11-10-514(a)(1) (Supp. 2021), based on the agency's finding that Roach was discharged

from his work for reasons other than misconduct connected with the work. On appeal from the agency's determination, the Appeal Tribunal issued a decision reversing the agency and finding that Roach was disqualified from benefits under Ark. Code Ann. § 11-10-513(a) (Supp. 2021) because Roach voluntarily left his work without good cause connected with the work. The Board of Review affirmed, but did not adopt, the Appeal Tribunal's decision. The Board issued a detailed decision wherein it found that Roach was disqualified from benefits because he voluntarily left his work without good cause connected with the work.

Roach now appeals from the Board's decision, arguing that the evidence did not support its finding that he voluntarily quit his employment.[1] We affirm.

On appeal of an unemployment-compensation case, we review the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Board's findings. *Jones v. Dir.*, 2019 Ark. App. 341, 581 S.W.3d 516. The Board's findings of fact are conclusive if supported by substantial evidence. *Id.* Substantial evidence is evidence a reasonable mind might accept as adequate to support a conclusion. *Id.* Appellate review is limited to determining whether the Board could reasonably reach its decision based on the evidence before it, even if there is evidence on which the Board might have reached a different decision. *Higgins v. Dir.*, 2016 Ark. App. 449, 503 S.W.3d 833. The credibility of

---

[1]Roach makes no argument that he had good cause to quit the employment. His claim for benefits is solely premised on his contention that he did not quit but was instead discharged for reasons other than misconduct.

witnesses and the weight to be accorded their testimony are matters to be resolved by the Board. *Id.*

Raney Nutt and Tyler Nutt are co-owners of 168 Farms. Both Raney and Tyler testified on behalf of the employer.

Raney testified that, although during his employment Roach's primary duties involved driving a truck, he was not hired exclusively as a truck driver. Raney stated that Roach also performed work on the farm such as operating equipment, driving a tractor, hauling fuel to power units, changing oil in power units, and performing service work around the shop.

Raney testified that Roach's employment ended on June 1, 2020, because Roach quit.[2] Raney stated that Roach worked that morning but did not come back after lunch and that the next day, he received a text from Roach "stating his final hours and that he was done." Roach did not return to work after that. Raney stated that Roach was not laid off or fired and that the reason for Roach's separation from work was "self termination."

Raney stated that Roach quit during their busy season and that he was in no danger of being discharged. Raney stated that Roach left his employment at a critical time and that "we needed all the help we could get." Raney stated that when Roach quit, they had five loads to deliver and no one to drive the trucks. Raney further stated that, although the trucking part of the operation was almost finished, had he not quit, Roach would have been

---

[2]Raney stated that Roach's brother, who had also worked for 168 Farms, had quit at the same time.

3

assigned other duties such as driving a tractor. Raney stated that he had discussed this with Roach. Raney testified:

> [Roach] had the option of working on the farm, driving a tractor, and at the time, it was wet, yes. It was very wet. We couldn't work in the fields. There wasn't a lot of hours for anyone during that particular week that's in question but after that, the next week, it dried out and we had 2500 acres of soybeans to plant, ground work to do, and it took us until the end of June to continue to get our crop planted. And there's also irrigation equipment to service and keep running, fuel to haul, which is a truck driving job, seed to go get, which is a truck driving job, and delivering to the field, and getting water for the sprayer, which is a truck driving job. So, we had the work. There was no lack of work for anyone.

Raney testified that, because of Roach and Roach's brother quitting their employment, he was forced to apply for part-time workers from South Africa. Raney produced documentation that he applied for these workers on June 24, 2020, but stated that they were not actually hired until the first week in September.

Tyler corroborated Raney's testimony that Roach was not discharged from his employment. Tyler stated:

> There's always something to do. There is never a lack of work. We had plenty of actual truck driving jobs to do throughout the summer, and that's why we did not lay [Roach] off at that time.

Gary Roach testified on his own behalf, and his testimony differed drastically from that of Raney and Tyler. Roach stated that he was hired exclusively as a truck driver and that he had never done anything or been asked to do anything for 168 Farms except drive a truck. Roach stated that he weighs 350 pounds and has health issues that prevent him from doing farm work. Roach acknowledged that he is able to drive a tractor but stated that this was not part of his job duties.

4

Roach gave the following account with regard to his separation from employment. Roach stated that on June 1, 2020, he had hauled his last truck load and he called Raney at 11:00 a.m. and asked what else needed to be done. Roach testified:

> He says you can go home. I have no more work for you. I don't need you any longer. Turn in your hours. [I] turned in [my] hours at that moment. Not a day later.

Roach also testified about the South African workers that were hired by 168 Farms a few months after Roach's employment had ended. Contrary to Raney's testimony, Roach maintained that the hiring of these workers was planned prior to Roach's separation from employment. Roach stated that a couple months before he was discharged, Raney told him that he would be hiring South African workers to drive trucks, and Roach surmised that the hiring of these workers resulted in a tax break or government funding that benefited the employer.

Roach's brother also testified. Roach's brother stated that both he and Roach had been hired exclusively as truck drivers, and that on June 1, 2020, they were told by Raney that there was no more trucking to be done and to turn in their hours.

In this appeal, Roach argues that the Board erred in finding that he was disqualified from benefits as a result of voluntarily quitting his job without good cause. Specifically, Roach contends that there was insufficient evidence that he quit. Roach submits that the evidence instead showed that he was discharged by the employer because there were no more truck-driving duties available; thus, he should be awarded unemployment benefits because he was discharged for reasons other than misconduct connected with the work.

Roach relies on his own testimony wherein he stated that he was hired as a truck driver, that he had hauled his last load, and that his boss told him "I have no more work" and "I don't need you any longer." Roach asserts that after his discharge he was not replaced until South African workers were hired three months later. Roach further states that the payroll records showed that he had been paid entirely out of the employer's truck-driving account, although the employer had other accounts for farm labor.

We hold that the Board's decision was supported by substantial evidence. This case came down to the credibility of the witnesses, and the credibility of the witnesses and the weight to be given their testimony are matters within the exclusive province of the Board. *See Calvin v. Dir.*, 31 Ark. App. 74, 787 S.W.2d 701 (1990). Roach acknowledges this in his brief, where he states that "the evidence was diametrically opposed," that "the employer's statement was that claimant quit, which claimant adamantly denied," and that "the issue is who is telling the truth."

Leaving credibility decisions to the Board, as we must, the Board could reasonably conclude that on June 1, 2020, Roach voluntarily quit his employment. Roach testified that he was laid off and told that there was no more work and not to return. Conversely, Raney testified that Roach left after lunch and then sent a text stating that he was done even though 168 Farms still needed his services. Raney stated that Roach was not laid off or fired and that there was additional available work to be done, including five loads to be hauled; and farm work, such as driving a tractor, hauling fuel, and performing service work around the

6

shop.[3] The Board weighed the conflicting testimony and found that Roach had voluntarily quit his employment without good cause, and we hold that the Board could reasonably reach its decision based on the evidence before it.

Although Roach's single point on appeal is a challenge to the sufficiency of the evidence supporting his disqualification, we note that Roach also raises subpoints within this argument. We, however, conclude that none of these subpoints have merit.

Roach argues that the *Appeal Tribunal* erred in arbitrarily disregarding Roach's testimony. We first note that because the Board of Review did not adopt the Appeal Tribunal's decision, we are reviewing only the decision made by the Board and not the Appeal Tribunal. To the extent Roach may also be arguing that the Board arbitrarily disregarded his testimony, we disagree. Roach cites *Butler v. Director of Labor*, 3 Ark. App. 229, 624 S.W.2d 448 (1981), where we stated that the testimony of a party cannot be taken as undisputed even if the party is the only witness but that such testimony cannot be arbitrarily disregarded and there must be some basis for disbelieving it. Here, the Board did not arbitrarily disregard Roach's testimony; it weighed his testimony against that of the employer and made a credibility determination as it was required to do.

Roach also argues that the *Appeal Tribunal* failed to make sufficient findings of fact to support its decision. Again, we are reviewing the decision of the Board and not the Appeal

---

[3]We observe that, although Roach testified that he was hired as only a truck driver, on his application for unemployment benefits he listed his "specific occupation" as "farmworkers and laborers, crop, nursery, and greenhouse."

7

Tribunal. To the extent Roach may also be arguing that the Board failed to make sufficient findings of fact, we disagree. The Board must make sufficient findings of fact on the existing record to enable the appellate court to review the Board's basis for its opinion. *Sanders v. Emp. Sec. Dep't*, 80 Ark. App. 110, 91 S.W.3d 520 (2002). Here, the Board issued a detailed five-page decision wherein it recited the relevant testimony and made findings of fact in support of its opinion that Roach had voluntarily left his work without good cause connected with the work.

Finally, Roach argues that the "Department, in essence, was an advocate for the employer, assumed the role of criminal prosecutor, while at the same time a decision-maker with the authority of making judgments based on the facts and the law," all of which denied Roach his constitutional right to due process. Roach states that at the hearing below, the Appeal Tribunal presented evidence on the employer's behalf and acted as the employer's advocate. However, this argument is not preserved because no objection or argument was raised below relating to any of these claims. In order to preserve a constitutional argument in an appeal from an agency decision, the constitutional issue must first be raised and developed at the administrative level. *Teston v. Ark. State Bd. of Chiropractic Exam'rs*, 361 Ark. 300, 206 S.W.3d 796 (2005).

For the reasons stated herein, we affirm the Board's decision that Roach is disqualified from unemployment benefits based on the Board's finding that Roach voluntarily left his employment without good cause connected with the work.

Affirmed.

8

GLADWIN and KLAPPENBACH, JJ., agree.

*Larry J. Steele PLC*, by: *Larry J. Steele*, for appellant.

*Cynthia L. Uhrynowycz*, Associate General Counsel, for appellee Division of Workforce Services.