Cite as 2024 Ark. App. 582

# ARKANSAS COURT OF APPEALS
## DIVISION II
No. E-23-319

| | |
|---|---|
| DANIEL HARRIS<br><br>APPELLANT<br><br>V.<br><br>DIRECTOR, DIVISION OF<br>WORKFORCE SERVICES<br><br>APPELLEE | Opinion Delivered November 20, 2024<br><br>APPEAL FROM THE ARKANSAS<br>BOARD OF REVIEW<br><br>[NO. 2023-BR-00639]<br><br><br><br>AFFIRMED |

### WENDY SCHOLTENS WOOD, Judge

Daniel Harris appeals the decision of the Board of Review (Board) dismissing his unemployment-benefits appeal on the basis that his untimely appeal to the Appeal Tribunal (Tribunal) was not due to circumstances beyond his control. Harris argues that the Board's decision is not supported by substantial evidence. We affirm.

The Division of Workforce Services (DWS) issued a notice of nonfraud overpayment determination informing Harris that he was liable to repay an overpayment of $5175 for the weeks beginning on October 15, 2011, and continuing through April 14, 2012. The notice stated that the mailing date was June 1, 2012. Harris did not file an appeal to the Tribunal until February 2023 when he received a January 2023 benefit-overpayment statement.

A hearing was held pursuant to *Paulino v. Daniels*, 269 Ark. 676, 559 S.W.2d 760 (Ark. App. 1980), to determine if the untimely filing of the appeal was due to circumstances beyond Harris's control. The hearing officer asked Harris if he had received the June 1, 2012 notice of

nonfraud overpayment determination, and Harris replied no. Harris confirmed that 96 Village Terrace in Mabelvale, which was the address listed on the notice, was his address when the notice was mailed and that he did not have any issues receiving mail at that address. Harris's wife also confirmed that they had no issues receiving mail at that address.

The hearing officer asked Harris if he was aware he had an overpayment from DWS prior to receiving the benefit-overpayment statement in 2023, and Harris responded:

> In 2010 -- when it was originally sent out in 2010, that was the one and only statement, or letter, regarding the overpayment that I've ever received -- was in 2010 that I responded to. I called to dispute it, was told there was nothing I could do about [it], I'd have to repay it.

The hearing officer questioned if the notice Harris received in 2010 was for a previous overpayment, and Harris said, "[N]o it's for this one." Harris said he was overpaid in 2010, and his wife agreed that he received only one overpayment notice, which was in 2010. Harris said he had not received anything since then. Harris testified about other mail that he received at his address, including a notice to vacate the property, which was included in the record.

The Tribunal determined that Harris failed to show that his late filing was due to circumstances beyond his control and dismissed his appeal. Without conducting a hearing, the Board affirmed the decision of the Tribunal. The Board's decision stated that the "record reflects a reasonable opportunity, at the hearing before the Tribunal, for the presentation of evidence on the issues controlling the substantial rights of the parties in this matter." Specifically, the Board found:

> The claimant seems to be confused about the process. The claimant argues that the Date of the Notice of Non-Fraud Overpayment Determination (June 1, 2012) is incorrect. He claims the original Non-Fraud Overpayment determination was mailed to him in 2010. There may have been a determination that was sent to him in 2010, but

2

there is also a Notice of Non-Fraud Overpayment Defemination sent to the address the claimant and his wife [are] adamant they lived at during that time period dated June l, 2012. The June l, 2012, Notice informed him he was liable to repay non-fraud overpayments in the amount of $5,175.00 under Ark. Code Ann. § 11-10-532(b) for the weeks October [1]5, 2011, through April 14, 2012. The claimant and his wife state that they did not have trouble with their mail and did not provide any other reason they may not have received that June l, 2012, Notice. They simply insist they did not receive the June 1, 2012, Notice. The law presumes that a letter is received by the person to whom it is addressed. *Skaggs v. State*, 287 Ark. 259, 697 S.W.2d 913 (1985); *Moore v. State*, 285 Ark. 321, 68[8] S.W.2d 7[33] (1985). While this is a rebuttable presumption, the evidence presented is insufficient to rebut the presumption. The claimant simply saying he did not receive the June 1, 2012, Notice is not sufficient to show he did not receive it.

Harris timely appealed the Board's decision.

On appeal of an unemployment-compensation case, we review the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Board's findings. *Jones v. Dir.*, 2019 Ark. App. 341, at 3, 581 S.W.3d 516, 518. The Board's findings of fact are conclusive if supported by substantial evidence, which is evidence a reasonable mind might accept as adequate to support a conclusion. *Id.* at 3, 581 S.W.3d at 518. Appellate review is limited to determining whether the Board could reasonably reach its decision in light of the evidence before it, even if there is evidence on which the Board might have reached a different decision. *Higgins v. Dir.*, 2016 Ark. App. 449, at 6, 503 S.W.3d 833, 837. The reviewing court may not substitute its findings for the Board's, even though the court might have reached a different conclusion had it made an original determination on the same evidence. *Id.* at 6, 503 S.W.3d at 837. The credibility of witnesses and the weight to be accorded their testimony are matters to be resolved by the Board. *Id.* at 6, 503 S.W.3d at 837.

To appeal the DWS determination, a claimant must file a written notice of appeal with the Tribunal within twenty calendar days of the mailing date of the determination. Ark. Code Ann. § 11-10-524(a)(1) (Supp. 2023). If the appeal is not filed within the statutory time period, the appeal may still be considered timely if the late filing was the result of circumstances beyond appellant's control. Ark. Code Ann. § 11-10-524(a)(2).

Harris concedes that he and his wife lived at 96 Village Terrace in Mabelvale in 2012, it was determined that the notice of nonfraud overpayment was mailed to that address and that they did not have any issues receiving mail at that address. But he argues the Board did not mention the 2013 notice to vacate that address and that there was no testimony from a representative of DWS about the "letter telling [him] about the timelines for appeal" or that the notice was "sent by certified mail, return receipt requested, as suggested." Harris contends that the Board's decision is not supported by substantial evidence because it did not have all the relevant facts before it and asks that we reverse and remand for the Board to take additional evidence.

The Board has the discretion to find that a tardy appeal is actually timely. *Young v. Dir.*, 2022 Ark. App. 257, at 4 (citing *Price v. Dir.*, 2011 Ark. App. 100). The burden of proof is on the claimant. *Id.* The operative statutory wording is "may," not "shall." *Id.* Moreover, this is a fact-intensive inquiry driven in large part by credibility determinations. *Id.* "There is a presumption of fact that, when a letter, properly and sufficiently addressed and stamped, is mailed, it and its contents were received by the addressee in due course of mail, which ceases to exist, and becomes a question of fact, when the addressee denies receipt. A mere denial that a properly mailed letter was not received is not sufficient, as a matter of law, to rebut the

4

presumption; it simply leaves the question of receipt to the [finder of fact]." *Id.* (quoting *Swink & Co. v. Carroll McEntee & McGinley, Inc.*, 266 Ark. 279, 290–91, 584 S.W.2d 393, 399 (1979) (internal citations omitted)).

The present case is similar to *Young.* Harris claims that he did not receive the June 1, 2012 notice, but the notice displays an address that Harris agreed was correct. He said he had no issues with receiving mail at that address and admitted that he received other notices at that address. Harris agreed that he was living at the address when the notice was mailed. Harris did not file an appeal until February 2023.

Although Harris contends that the Board did not consider the notice to vacate, it was introduced at the hearing and was part of the record. And the notice to vacate supports the Board's finding that Harris was living at 96 Village Terrace in June 2012 and that Harris received mail at that address. In addition, the Board noted Harris's confusion about the process, stating that Harris believed the date of the notice of nonfraud overpayment was in 2010 and not 2012. In sum, other than his denial that he received the 2012 notice, Harris presented no evidence to rebut the presumption that the notice was receipt by him. Therefore, we hold there is substantial evidence to support the Board's decision that the untimely filing was not due to circumstances beyond Harris's control.

Affirmed.

MURPHY and BROWN, JJ., agree.

*Rojas Smith Attorneys, P.A.*, by: *Heather Hersh*, for appellant.

*Cynthia L. Uhrynowycz*, for appellee.