SLIP OPINION

Cite as 2015 Ark. App. 537

# ARKANSAS COURT OF APPEALS

DIVISION II
No. E-14-1042

EDDIE DEBNAM
APPELLANT

V.

DIRECTOR, DEPARTMENT OF
WORKFORCE SERVICES
APPELLEE

Opinion Delivered September 30, 2015

APPEAL FROM THE ARKANSAS
BOARD OF REVIEW
[NO. 2014-BR-02683]

REVERSED AND REMANDED

## CLIFF HOOFMAN, Judge

Appellant Eddie Debnam appeals from the Arkansas Board of Review's November 26, 2014 order, finding him ineligible for unemployment benefits because he was not available for suitable work. On appeal, appellant's sole contention is that the Board lacked substantial evidence to deny him unemployment benefits on the basis that he was unavailable for work due to a lack of transportation. We reverse and remand.

Appellant filed an application for unemployment benefits, in which the "Yes" check boxes were marked that he was able to begin work immediately and that he was able to work full time. However, the "No" check box was marked in response to the question, "Do you have transportation to a job or has transportation to a job been arranged?" A subsequent statement by appellant made to the Department appears in the record that states, "I no longer have a vehicle. There is no public transportation in Elaine, Arkansas. There are no places

that I can walk to. It would cost me to ask people for rides." Appellee, the Director of the Department of Workforce Services (Department), issued a "Notice of Agency Determination" on September 18, 2014, finding that appellant was not eligible for benefits due to the fact that his lack of transportation made him unavailable for suitable work pursuant to Arkansas Code Annotated section 11–10–507(3)(A) (Supp. 2013). Appellant appealed the decision to the Arkansas Appeal Tribunal (Tribunal), and a telephone hearing was held on October 14, 2014. In his petition, appellant alleged that he had checked the box that he did not have transportation because at that time he did not own a vehicle. However, he stated that he did have reliable transportation through family members.

At the hearing before the Tribunal, only appellant testified. He explained that he had given his car to his daughter because he did not need it at his prior place of employment. However, he testified that his daughter would provide him transportation and that he could also borrow the car when he needed to do so. In regard to why the initial application indicated that he did not have transportation, he further explained that he misunderstood the question. He testified that he had been applying for several jobs, including jobs in Tunica, Mississippi, which was forty-five minutes away from his home; West Helena, Arkansas, which was about twenty miles away from his home; and Chicago, Illinois. While he previously was a chef for approximately seventeen years, his search and applications were not limited to a chef position but also included positions in butchering, farm work, and surveillance. Because most of the potential employers only accepted online applications and because he did not have a computer at his home, appellant testified that he had been relying on his daughter, his cousin,

or his sister to take him where he needed to apply.

After the hearing, the Tribunal affirmed the Department's decision, and appellant timely appealed to the Board. The Board specifically found the following in pertinent part:

> The claimant contends that he is still available for work despite a lack of transportation. While it is true that there are methods other than a personal vehicle by which an individual worker could get to and from work, the claimant indicated in his initial application that no such other arrangements had been made in the event he was offered work. Approximately two weeks after filing that initial application, the claimant gave the following statement to the Department: "I no longer have a vehicle. There is no public transportation in Elaine, Arkansas. There are no places that I can walk to. It would cost me to ask people for rides." The Board fails to see any other methods by which the claimant would get to and from work other than a personal vehicle, public transportation, walking, or asking for rides. As such, the preponderance of the evidence indicates the claimant lacks a method by which he could get to work, which renders him unavailable for suitable work under the applicable statute.
>
> The claimant contends that a mere lack of transportation should not render him unavailable for suitable work and cites as support the holding of the Arkansas Court of Appeals in *Buchanan v. Director, Arkansas Employment Security Department*, 91 Ark. App. 35 (2005). In that case, the claimant lacked transportation or a driver's license but had always ridden to work with a coworker until the employer enacted a policy that all employees must have driver's licenses regardless of whether they actually drive themselves to work or not. The claimant's lack of a driver's license caused him to be discharged. The Court held that while "many employment opportunities will be unavailable to appellant . . . as long as there exists employment that does not require appellant to have a driver's license, he is available to work." *Buchanan v. Director, Arkansas Employment Security Department*, 91 Ark. App. 35, 38 (2005). However, the claimant in the present case indicated to the Department that, not only did he lack a personal vehicle, but he could not use public transportation, could not walk to work, and that it would cost him to ask people to ask for rides, which seemed to imply he would be hesitant to do so. In such a case, the Board is unable to discern a method by which the claimant could work, other than working from home. The claimant has not shown that his work history includes working from home, so such work would not be suitable to the claimant. In the *Buchanan* case, the claimant could use methods other than driving to get to work. The claimant in this case has offered no such alternative, and, as such, the claimant has not shown that he is available for suitable work.

This appeal followed.

3

In unemployment cases, findings of fact by the Board are conclusive if supported by substantial evidence, and substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Holmes v. Dir.*, 2015 Ark. App. 337, 463 S.W.3d 744; *Ivy v. Dir.*, 2013 Ark. App. 381. We review the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Board's findings, and even when there is evidence on which the Board might have reached a different decision, the scope of our judicial review is limited to a determination of whether the Board could have reasonably reached its decision on the evidence before it. *Ivy*, *supra*. This court may not substitute its findings for the Board's, even though this court might have reached a different conclusion had it made the original determination on the same evidence. *Holmes*, *supra*. Furthermore, the credibility of witnesses and the weight to be afforded their testimony are matters to be resolved by the Board. *Id.*

A claimant is eligible to receive benefits with respect to any week only if the Department finds in part that he or she is "unemployed, is physically and mentally able to perform suitable work, and is available for such work." Ark. Code Ann. § 11–10–507(3)(A) (Repl. 2012). Furthermore, "[m]ere registration and reporting at a local employment office shall not be conclusive evidence of ability to work, availability for work, or willingness to accept work unless the individual is doing those things which a reasonably prudent individual would be expected to do to secure work." *Id.*

The public policy of employment-security law is to set aside resources to be used for the benefit of people who are unemployed through no fault of their own. *Sanyo Mfg. Corp.*

4

*v. Stiles*, 17 Ark. App. 20, 702 S.W.2d 421 (1986). With this principle in mind, this court has previously reversed the Board's decision that a claimant was unavailable to work when the claimant lived in an area where work was sparse and she would be unable to relocate unless the position paid at least $4.00 per hour. *Hefton v. Daniels*, 270 Ark. 857, 606 S.W.2d 379 (Ark. Ct. App. 1980). Furthermore, we have held that a claimant that was restricted by a physician to light-duty work was available for suitable work when he applied for positions within his functional capacity. *McDaniel v. Dir.*, 103 Ark. App. 231, 288 S.W.3d 281 (2008).

Additionally, the issue in this case was addressed by this court in *Buchanan v. Director*, 91 Ark. App. 35, 207 S.W.3d 567 (2005). In *Buchanan*, the claimant was discharged from his place of employment after the employer introduced a new policy requiring all employees to have a valid driver's license, and the Board subsequently denied him benefits pursuant to section 11-10-507(3)(A). *Id*. Buchanan testified that he lacked a driver's licence and that he had no transportation, but he generally relied on a relative or coworker to take him to and from work. *Id*. This court reversed and remanded the Board's decision, holding that a "mere lack of transportation and a driver's license does not constitute unavailability to work under employment security law." *Buchanan*, 91 Ark. App. at 37, 207 S.W.3d at 569. We further explained that while many employment opportunities would be unavailable to Buchanan, as long as there existed employment that did not require him to have a driver's license, he was available to work. *Id*.

As in *Buchanan*, Debnam admittedly lacked a personal vehicle and relied on other people for transportation, and the Board did not specifically find appellant's testimony not to

be credible or that it should be afforded no weight. Instead, the Board relied on appellant's statement made to the Department that "it would cost him to ask people to ask for rides" as evidence that he was unavailable for suitable work. While appellant's statement identified another method of transportation, the Board found that his statement implied that he would be "hesitant" to ask other people for rides. Additionally, the Board specifically found that because he had not offered an alternative form of transportation, he failed to show that he was available for suitable work. Even if appellant may have been "hesitant" to ask for rides as the Board found, the Board failed to find that he was unwilling to use the option if he found available work. Therefore, appellant had offered an alternative form of transportation to and from work, as did the claimant in *Buchanan*, despite the Board's statement to the contrary. Furthermore, appellant testified at the hearing that he had family that were willing to assist him with transportation once he found a new position, and these same family members had been providing him transportation while he was looking for work. Accordingly, we reverse the decision of the Board of Review and remand this case for a determination of benefits.

Reversed and remanded.

GLADWIN, C.J., and WHITEAKER, J., agree.

*Kevin R. De Liban*, Legal Aid of Arkansas, Inc., for appellant.

*Phyllis A. Edwards*, for appellee.