Cite as 2025 Ark. App. 140

# ARKANSAS COURT OF APPEALS

DIVISIONS I & II

**No.** E-24-98

|  |  |
|---|---|
| RICHARD HASTINGS | **Opinion Delivered** March 5, 2025 |
| APPELLANT | APPEAL FROM THE ARKANSAS BOARD OF REVIEW |
| V. | [NO. 2024-BR-00310] |
| DIRECTOR, DIVISION OF WORKFORCE SERVICES | |
| APPELLEE | AFFIRMED |

## N. MARK KLAPPENBACH, Chief Judge

The Arkansas Board of Review affirmed the denial of Richard Hastings's unemployment benefits on the basis that he quit his job without making reasonable efforts to preserve his job rights.[1] Hastings appeals, and we affirm.

In his application for benefits dated November 20, 2023, Hastings checked the box for "medical leave" when asked the type of separation. In the employer's response, owner Daniel Matson checked a box indicating that Hastings had quit due to health reasons. On January 31, 2024, Hastings completed two miscellaneous claimant statements. Hastings wrote that he contacted Matson while he was hospitalized and that he did not quit, but he could not work. Hastings also wrote that he "did not request a leave of absence because I did not know if or when I could return back to work. I just didn't think about it. I could

---

[1]Hastings was also denied benefits in a separate Board order, also affirmed today. *See Hastings v. Dir.*, 2025 Ark. App. 138.

not work and I let them know." On March 6, 2024, Hastings testified before the Appeal Tribunal that Matson called him on his sixth day of hospitalization and said, "[W]e need employees . . . we're going to get you off the books so we can hire someone else."

The Board found that Hastings's written statements to the Division were more credible than his testimony because they were more proximate in time to the separation and more consistent with the employer's report of his separation from work. Accordingly, the Board found that Hastings initiated the separation from work when he informed his supervisor that he could not work and that he did not make reasonable efforts to preserve his job rights.

On appeal of an unemployment-compensation case, we review the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Board's findings. *Owen v. Dir.*, 2024 Ark. App. 616, 701 S.W.3d 828. The Board's findings of fact are conclusive if supported by substantial evidence. *Id.* Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* We may not substitute our own findings for the Board's, even though we might have reached a different conclusion had we made the original determination on the same evidence. *Hollis v. Dir.*, 2024 Ark. App. 145, 684 S.W.3d 660. Furthermore, the credibility of witnesses and the weight to be afforded their testimony are matters to be resolved by the Board. *Id.*

A person who voluntarily leaves his employment without good cause connected with the work shall be disqualified for benefits. Ark. Code Ann. § 11-10-513(a)(1) (Supp. 2023). However, no individual shall be disqualified for quitting without good cause connected with the work if, after making reasonable efforts to preserve his job rights, he left his last

2

work because of illness. Ark. Code Ann. § 11-10-513(b)(2)(A). A claimant must make reasonable efforts to preserve his or her job rights, such as by requesting a leave of absence. *Woodunique, Inc. v. Dir.*, 103 Ark. App. 280, 288 S.W.3d 699 (2008). We cannot find that such a request would have been impractical or would have constituted a futile effort when there is no evidence regarding what the employer's response to such a request might have been. *Id.*

Hastings's written statements that he informed his employer he could not work and did not request a leave of absence corroborate the employer's response that he quit due to health reasons. Accordingly, we hold that the Board's decision is supported by substantial evidence.

Affirmed.

BARRETT, HIXSON, and MURPHY, JJ., agree.

VIRDEN and HARRISON, JJ., dissent.

**BRANDON J. HARRISON, Judge, dissenting**. Welcome to the Twilight Zone. Where Mr. Hastings, a 61-year-old colorectal and liver cancer patient in active treatment (emergency surgery, radiation, and chemotherapy) is told: "You can't do *all* the liquor store clerk tasks *right now* that you could when you were healthy? Too bad. No public benefit for you." Was there misconduct? No. Progressive-discipline policy violations? No. Did Mr. Hastings go dark on his employer and abandon his post? No. Does the record even hint that he is gaming the system? No, No, No.

After the claim-initiating forms went back and forth, the Division denied Mr. Hastings benefits. "Due to a personal illness you were not able to perform suitable work,"

3

the Division wrote in an agency denial of Mr. Hastings' claim. He appealed to the Appeal Tribunal, where only he appeared *under oath* (no employer) to discuss why the desk-level denial should be reversed for an approval of benefits. In a petition to the Appeal Tribunal he wrote, "I was diagnosed with colorectal cancer on 11/8/23 and was hospitalized for emergency surgery, since I was hospitalized, my employer fired me on 11/13/23. I am eligible for rehire when I recover . . . and have been unable to secure employment elsewhere." In a companion claim, the Board of Review also mistakenly elevated one X, placed in one box by the former employer, on one early-response form, to a degree that it blinded itself to the rest of a robust record. Mr. Hastings should have been awarded benefits.

## I.

I discuss case number E-24-97/2024-BR-309 first. For some reason there were two cases opened on essentially one event and separation; but here, numerically speaking, is where Mr. Hastings' sad saga started after he went in for a colonoscopy scheduled on a day off work (a Wednesday) and quickly found himself being rushed from clinic to hospital, where he was body-scanned, scheduled for emergency gastroenterology surgery, and admitted thereafter. In Mr. Hastings' words, "I went in for a colonoscopy and went to the hospital for a week." During his health crisis, he and his employer separated. (More on that aspect in Part II.) For now, here is what the Board of Review wrote (emphasis mine) after Mr. Hastings had done his paperwork[1]—and put himself under oath at a hearing, during which, again, the employer didn't show:

---

[1]When quizzed by the hearing officer at the only Appeal Tribunal hearing, he confirmed that he still had his colostomy bag in place when the hearing convened.

4

The claimant testified at the Tribunal hearing. He stated that he was separated from his previous job after he was diagnosed with colon cancer. He indicated that his prior job, and most of his other jobs, required heavy lifting he could not do. *The claimant testified that he could do other jobs which did not require lifting, and that he sought work which did not require lifting after separating from his last employer.* He indicated that his lifting restriction was temporary, and that he expects to be able to return to fulltime employment without any restrictions.

. . . .

*The issue before the Board is whether the claimant is able and available to perform suitable work under [section] 11-10-507(a)(3)(A).* The claimant separated from last work due to illness. He had lifting restrictions that prevented him from performing the type of work that he previously performed for employers. Additionally, the claimant expected to recover and return to work without restrictions. . . . [T]*he Board finds that suitable work for [Mr. Hastings] to perform required lifting, even if the claimant is able to do other work not requiring lifting.*

It then concluded:

The claimant's testimony reflects that his last job required him to lift heavy objects, and all the wages in the Notice of Monetary Determination was from his last employer [the liquor store]. As such, the claimant's lifting restriction rendered him unable to perform suitable work. Therefore, the Tribunal decision finding that claimant was unable to perform suitable work is affirmed.

I can't agree with this reasoning or outcome on this record. The Board of Review acknowledged Mr. Hastings couldn't lift as much for a time because of serious illness, acknowledged that he was looking for work that he could do, and was expected to recover soon. But it *still required* that he be able to perform as if he were a healthy man—and not a physically limited cancer patient—before he could qualify for benefits. That blinks at reality and makes no sense to me. The unreasonable decision should be reversed. Today.

Think about what the Board of Review has said: Mr. Hastings is "unable to perform suitable work"; therefore, he gets no public benefit. Why can't he do "suitable work" in the statutory sense? Because he couldn't do all the heavy lifting at the store that he had done when healthy. But who can operate at 100% while coming out of emergency surgery and undergoing cancer treatment that ended in a colostomy bag and a "chest port" so chemotherapy could be reliably administered. The legal principle and result the majority has blessed, with nary an analytical word, plainly produces an unjust result in the real world for no good reason at all, factual or legal.

Consider the ramifications. What the denial must be saying is that there is *no* light-duty work option available to sick-but-still-functioning people like Mr. Hastings in the marketplace. Why? Because of a tortured statutory reading. The error means a physically limited person due to illness must be capable of functioning as he or she did when healthy, or you get no benefits. *Not even if you can admittedly do other lighter work and are seeking it.* "[T]he Board finds that work suitable for [Mr. Hastings] to perform required lifting, even if the claimant is able to do other work not requiring lifting." The "no suitable work" tag = No benefit. Because Mr. Hastings was a fully capable employee during his healthy employment period before disaster struck, he can't qualify for light work now and thereby be deemed capable of "suitable work," a label you must wear before being awarded a benefit. The Board of Review's strained logic, which the majority takes on, produces an unjust outcome and a concerning precedent.

One can only believe that more ill workers will be denied benefits through no fault of their own. What's the public policy behind the benefit Mr. Hastings sought? "The public policy of employment-security law is to set aside resources to be used for the benefit of people who are unemployed through no fault of their own." *Debnam v. Dir.*, 2015 Ark. App. 537, at 4–5, 471 S.W.3d 657, 660. *See also Garrett v. Cline*, 257 Ark. 829, 832, 520 S.W.2d 281, 284 (1975) (stating the purpose of unemployment-compensation statutes is "to protect the state unemployment compensation fund against claims of individuals who would prefer benefits to jobs"). Consider that policy observation CANCELED by today's majority opinion.

Nor is an important statutory-interpretation tenet being applied when warranted: "[W]e do not engage in statutory interpretations that defy common sense and produce absurd results." *Dachs v. Hendrix*, 2009 Ark. 542, at 8–9, 354 S.W.3d 95, 101. After today, we have a precedent whose result functionally equates an active cancer patient looking for lighter work in the marketplace with a worker who commits misconduct, abandons a job, can't correct mistakes, couch surfs, or is a serial absentee, etc. I can't see it.

The bottom line here is as straight as a geometer's: the Board of Review plainly held an unavoidable tragedy against Mr. Hastings. It in fact told him that if he couldn't act as he did when he was healthy, then he can get no benefits now, even if he can do lighter work and is looking for it. This message despite hearing unrebutted testimony that he was willing to work where he could. He was also reaching out to potential employers to see if he could be hired and talked about those

interactions with the hearing officer. Mr. Hastings even hoped to be rehired at the liquor store when better because he had no reason to believe he couldn't or wouldn't likely be rehired there. If all that weren't enough, as a gentleman, he continued to speak well of the owner/operator of the liquor store while appealing the initial denial.

*Pay the Man.*

The Board of Review held Mr. Hastings to an unreasonable standard. So, too, has this court. Contributing to this unfortunate outcome is the Board of Review's curious interpretation of Arkansas Code Annotated section 11-10-507(a)(3)(A)(iii) (Supp. 2023) and the majority's stamp of approval on it. We should reverse the decision in E–24–97/2024–BR–309 for an award of benefits.

II.

Two wrongs don't make a right. In the companion case, E–24–98/2024–BR–310, the Board of Review ruled that Mr. Hastings was disqualified under section 11–10–513(a) and (b) (Supp. 2023), because he "voluntarily left last work without good cause connected with the work due to illness and without making reasonable efforts to preserve his job[.]" In my view, that too is an unsupportable decision. In terms of the standard of review, the Board of Review acted unreasonably and should therefore be reversed again.

Here is what it wrote in the second case opened under the same Mr. Hastings/liquor store separation (my added paragraph break):

> The claimant testified at the Tribunal hearing. He stated that he worked for the employer as a clerk and stocker. He indicated that he had a colonoscopy on November 8, 2023, and was hospitalized the same day after the physician discovered significant swelling in his colon. He said he had to have a colostomy bag inserted, and he was later diagnosed with cancer. The claimant testified that he kept in contact with his supervisor while he was

8

absent from work. He stated that he was contacted by his supervisor on November 13, 2023, and that the supervisor told him, "We need employees; we're going to get you off the books so we can hire someone else." The claimant maintained that he did not quit his job.

When asked what efforts he took to keep his job, the claimant responded by stating that he was a model employee and kept in contact with the employer. The written record contains the Application for Unemployment Insurance Benefits dated November 20, 2023. In the application, the claimant indicated that his reason for separating from last work was that he was on medical leave. The record contains the Notice to Last Employer, which was filled out by Daniel Matson, the employer's owner. In it, Matson reported that the claimant quit his job due to health reasons. Additionally, the record contains a Miscellaneous–Claimant Statement. In it, the claimant indicated that he could not work, and he informed his employer that he could not work. He also indicated that he did not request a leave of absence before separating from the job. In a separate Miscellaneous–Claimant Statement, the claimant reported that he did not feel as though he quit the job.

The issue before the Board is whether the claimant was disqualified from benefits under Arkansas Code Annotated sections 11-10-513 or 514. The claimant stated that he did not quit his job. However, the written record shows otherwise. The claimant indicated that he was separated from work due to medical leave, and the employer returned a form showing that the claimant quit his job for health reasons. In his statement to the Division, the claimant reported that he let his supervisor know that he could not work for the employer. The claimant's statement in the written record, being more proximate in time to the separation and more consistent with the employer's report of his separation from work, is more credible. Thus, the Board finds that the claimant initiated the separation from work when he informed his supervisor that he could not work. Accordingly, the claimant quit his job.

In cases of quit, the claimant must show by a preponderance of the evidence that he voluntarily left last work with good cause connected with the work. *Keener v. Dir.*, 2021 Ark. App. 88, 618 S.W.3d 446. The claimant quit due to illness. His reason for quitting was not attributable to the employer and thus not connected with the work. State law provides an exception to the disqualification if the claimant quit last work due to illness and after making reasonable efforts to preserve job rights. Ark. Code Ann. § 11-10-513(b). While the claimant may have kept in contact with the employer, he did not request a leave of absence.

The Board notes that the Arkansas Court of Appeals held in

9

*Woodunique, Inc., v. Director*, 103 Ark. App. 280, 103 S.W.3d 699 (2008), that a claimant's failure to specifically attempt to obtain a leave of absence was evidence that the claimant did not make reasonable efforts to preserve job rights. The claimant also did not make other efforts beyond keeping in contact with the employer. Therefore, the Tribunal decision finding that the claimant voluntarily left last work without good cause connected with the work is affirmed.

Here again I can't agree with the Board of Review. The ruling ignores Mr. Hastings' testimony at the hearing at which no employer representative appeared to rebut anything he said under oath. Further, some initial employer box-checking has received a myopic, hyper-selective treatment. "The record contains the Notice to Last Employer, which was filled out by Daniel Matson, the employer's owner. In it, Matson reported that the claimant quit his job due to health reasons." Here the Board of Review is referring to *only* one X marked in one box, on one form, during the initial claim process. One X placed in one box, by a self-interested and aged owner/operator (read the hearing transcript), is all it takes to sweep Mr. Hastings under the benefits rug? By the way, speaking of fair and balanced, Mr. Hastings had the chance to mark that same box on his related form, and it's left BLANK. Why does the early box-checking "tie" go to the otherwise silent and absent employer? What about the Board of Review's acknowledgement that (my emphasis), "[Mr. Hastings] stated that he was contacted by his supervisor on November 13, 2023, and that the supervisor told him, '*We need employees; we're going to get you off the books so we can hire someone else.*' *The claimant maintained that he did not quit his job.*" What of all the unrebutted hearing testimony, and why doesn't it cut heavily in favor of Mr. Hastings? I think it does.

Regarding whether Mr. Hastings took sufficient steps to preserve his job rights, I can't agree that a man in his position needed to do more under the circumstances. He faced

a jarring and critical health situation such that his life was upended within one week. The record convinces me that he acted reasonably and should be awarded benefits. If there was some murkiness in the employer/employee space while Mr. Hastings was saving his life, the tie should go to the claimant. Nothing approaching "fault" or dilatoriness or a "devil may care" attitude or action can fairly be stuck to Mr. Hastings' case files. The decision in E-24-98/2024-BR-310 should therefore be reversed.

*Pay the Man.*

★ ★ ★

"I don't see how emergency surgery could disqualify me from [benefits]," Mr. Hastings expressed to the hearing officer. And he also rightly said, "[T]hese are the circumstances that unemployment insurance is for, you know?" I agree and would reverse the Board of Review's decisions and direct the Division of Workforce Services to pay the proper benefits. The Arkansas Supreme Court has before corrected this court's wrong in a much less drastic unemployment-benefits context, so perhaps there is some hope yet. *See* Ark. Sup. Ct. R. 2-4; *Garrett v. Dir.*, 2014 Ark. 50 (reversing the court of appeals decision on a petition for review).

In the meantime, Godspeed Richard Hastings.

VIRDEN, J., joins.

*Richard Hastings*, pro se appellant.

*Cynthia L. Uhrynowycz*, Associate General Counsel, for appellee.