Cite as 2025 Ark. App. 138

# ARKANSAS COURT OF APPEALS

DIVISIONS I & II

**No.** E-24-97

| | |
|---|---|
| RICHARD HASTINGS<br><br>                APPELLANT<br><br>V.<br><br><br><br>DIRECTOR, DIVISION OF<br>WORKFORCE SERVICES<br><br>                APPELLEE | **Opinion Delivered** March 5, 2025<br><br>APPEAL FROM THE ARKANSAS<br>BOARD OF REVIEW<br>[NO. 2024-BR-00309]<br><br><br><br><br><br>AFFIRMED |

### N. MARK KLAPPENBACH, Chief Judge

In this unbriefed unemployment-compensation case, Richard Hastings appeals the Board of Review's denial of unemployment benefits. The Board found Hastings ineligible because he was unable to perform suitable work.[1] We affirm.

The facts are undisputed. Hastings worked full time for Pinnacle Valley Liquor as a clerk and a stocker. In November 2023, Hastings was diagnosed with colon cancer, which necessitated surgery, chemotherapy, and radiation. He admittedly could not do the regular-duty heavy lifting required by his job, although he expected to return to work after his treatments ended and he had healed. In the "Able and Available–Claimant Statement" form filed with the Division of Workforce Services, Hastings said that he was not able to work

---

[1] Hastings was also denied benefits in a separate Board order, also affirmed today. *See Hastings v. Director*, 2025 Ark. App. 140 (E-24-98). There, we affirmed the Board's finding that Hastings was not entitled to unemployment benefits because he quit his liquor-store job without making reasonable efforts to preserve his job rights.

or available for work. Hastings believed he could do light duty but had not found a job within those limitations. He applied for Social Security benefits and Social Security emergency funds. To determine his weekly wage for unemployment purposes, his fifty-two weeks of prior wages were from his full-time, regular-duty job at the liquor store.

The agency, the Appeal Tribunal, and the Board found that Hastings was disqualified from receiving benefits pursuant to Ark. Code Ann. § 11-10-507(a)(3)(A) (Supp. 2023). The statute provides that a worker is eligible for unemployment if he is physically and mentally able to perform suitable work and is available for work. In determining what is suitable work, "part-time work shall be considered suitable work unless the majority of weeks of work in the period used to determine monetary eligibility are from full-time work." Ark. Code Ann. § 11-10-507(a)(3)(A)(ii). Additionally, "light-duty work shall be considered suitable work unless the majority of the number of weeks of work within the period used to determine monetary eligibility were weeks spent performing work that the worker is currently unable to perform due to his or her medical restrictions." Ark. Code Ann. § 11-10-507(a)(3)(A)(iii).[2]

Hastings could not perform the heavy lifting that he had done in his full-time job at the liquor store. Consequently, the Board found Hastings unable to perform suitable work resulting in his disqualification from unemployment benefits from November 12, 2023 to March 6, 2024. This appeal followed.

---

[2]Subdivision (a)(3)(A)(iii) was added in the 2019 legislative session. *See* Act 453 of 2019, section 1.

Unemployment compensation is a creature of statute. Since the enactment of our statutes related to unemployment compensation, the stated purpose has been to lighten the burden of involuntarily unemployment. However, an unemployed worker must qualify for unemployment benefits.

From the beginning, our unemployment statutes have required that a person be "able" to work and "available" for work in order to qualify for unemployment benefits. *See* Act 391 of 1941, section 4(c). While aspects of those terms' definitions may have been amended over the years, the statutes have consistently required the claimant to qualify for benefits under that prerequisite. That a claimant must be able and available to perform "suitable work" has been part of the statutory scheme for decades. *See* Act 155 of 1949, section 4. Since 2019, the applicable statute has clearly and unambiguously provided that a person who is available for only light-duty work is not eligible, *i.e.*, is not available for "suitable work," if the majority of the weeks used to determine his weekly wage were spent performing work that he is currently unable to perform due to his medical restrictions. *See* Act 453 of 2019, section 1 (codified at Ark. Code Ann. § 11-10-507(a)(3)(A)(iii)). Unfortunately, that is precisely the category into which Hastings falls.

The question of the correct application and interpretation of an Arkansas statute is a question of law, which the appellate court decides de novo. *Worsham v. Bassett*, 2016 Ark. 146, 489 S.W.3d 162. We first construe a statute just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Id.* When the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no need to resort to rules of statutory construction. *Pillow v. Director*, 2024 Ark. App. 76, 684 S.W.3d

302.  In that situation, courts will not search for legislative intent; rather, intent must be gathered from the plain meaning of the language used.  *Rodgers v. Ark. Parole Board*, 2024 Ark. 176, 700 S.W.3d 876.

On the undisputed facts in this case, and after our de novo review of the clear and plain meaning of the wording of the relevant statute, Hastings is not eligible for unemployment benefits because he was not able and available to do suitable work.[3]  Undoubtedly, Hastings's medical condition is a terrible circumstance.  He may qualify for some other benefits provided by the government.  In fact, Hastings has applied for benefits with the Social Security Administration.  However, we are not to legislate from the bench; that job is for our elected members of the Arkansas General Assembly.[4]  Our job is to conduct appellate review and determine whether the Board complied with the relevant unemployment laws.  The Board did not commit reversible error, and the Board's decision is supported by substantial evidence.

Affirmed.

---

[3]As stated above, in Hastings's companion appeal in E-24-98, which we affirm today, Hastings was disqualified from receiving unemployment benefits.  As a prerequisite to receiving benefits, an employee is required to make every reasonable effort to preserve his job rights before leaving employment.  *Owen v. Director*, 2024 Ark. App. 616, 701 S.W.3d 828.  The decision in E-24-98 effectively moots the current appeal.  However, to ensure the public's clear understanding of why we affirm Hastings's appeal in E-24-97 (given the bold dissent offered), we issue this opinion on the merits.

[4]The dissenting judges present an argument about how unfair it is that Hastings was found to be disqualified from receiving unemployment benefits for the period between November 2023 and March 2024.  However, our dissenting colleagues completely ignore a clear, unambiguous, and circumstance-specific statute and the fact that Hastings fits squarely within the statute that makes him ineligible.  If any changes need to be made to section 11-10-507, that is matter left to our legislators, not this appellate court.

BARRETT, HIXSON, and MURPHY, JJ., agree.

VIRDEN and HARRISON, JJ., dissent.

**BRANDON J. HARRISON, Judge, dissenting**. Welcome to the Twilight Zone. Where Mr. Hastings, a 61-year-old colorectal and liver cancer patient in active treatment (emergency surgery, radiation, and chemotherapy) is told: "You can't do *all* the liquor store clerk tasks *right now* that you could when you were healthy? Too bad. No public benefit for you." Was there misconduct? No. Progressive-discipline policy violations? No. Did Mr. Hastings go dark on his employer and abandon his post? No. Does the record even hint that he is gaming the system? No, No, No.

After the claim-initiating forms went back and forth, the Division denied Mr. Hastings benefits. "Due to a personal illness you were not able to perform suitable work," the Division wrote in an agency denial of Mr. Hastings' claim. He appealed to the Appeal Tribunal, where only he appeared *under oath* (no employer) to discuss why the desk-level denial should be reversed for an approval of benefits. In a petition to the Appeal Tribunal he wrote, "I was diagnosed with colorectal cancer on 11/8/23 and was hospitalized for emergency surgery, since I was hospitalized, my employer fired me on 11/13/23. I am eligible for rehire when I recover . . . and have been unable to secure employment elsewhere." In a companion claim, the Board of Review also mistakenly elevated one X, placed in one box by the former employer, on one early-response form, to a degree that it blinded itself to the rest of a robust record. Mr. Hastings should have been awarded benefits.

I.

I discuss case number E–24–97/2024–BR–309 first.  For some reason there were two cases opened on essentially one event and separation; but here, numerically speaking, is where Mr. Hastings' sad saga started after he went in for a colonoscopy scheduled on a day off work (a Wednesday) and quickly found himself being rushed from clinic to hospital, where he was body-scanned, scheduled for emergency gastroenterology surgery, and admitted thereafter.  In Mr. Hastings' words, "I went in for a colonoscopy and went to the hospital for a week."  During his health crisis, he and his employer separated.  (More on that aspect in Part II.)  For now, here is what the Board of Review wrote (emphasis mine) after Mr. Hastings had done his paperwork[1]—and put himself under oath at a hearing, during which, again, the employer didn't show:

> The claimant testified at the Tribunal hearing.  He stated that he was separated from his previous job after he was diagnosed with colon cancer.  He indicated that his prior job, and most of his other jobs, required heavy lifting he could not do.  *The claimant testified that he could do other jobs which did not require lifting, and that he sought work which did not require lifting after separating from his last employer.*  He indicated that his lifting restriction was temporary, and that he expects to be able to return to fulltime employment without any restrictions.
>
> . . . .
> *The issue before the Board is whether the claimant is able and available to perform suitable work under* [*section*] *11-10-507(a)(3)(A).*  The claimant separated from last work due to illness.  He had lifting restrictions that prevented him from performing the type of work that he previously performed for employers.  Additionally, the claimant expected to recover and return to work without restrictions.  . . . [*T*]*he Board finds that suitable work for* [*Mr. Hastings*] *to perform required lifting, even if the claimant is able to do other work not requiring lifting*.

---

[1]When quizzed by the hearing officer at the only Appeal Tribunal hearing, he confirmed that he still had his colostomy bag in place when the hearing convened.

6

It then concluded:

> The claimant's testimony reflects that his last job required him to lift heavy objects, and all the wages in the Notice of Monetary Determination was from his last employer [the liquor store]. As such, the claimant's lifting restriction rendered him unable to perform suitable work. Therefore, the Tribunal decision finding that claimant was unable to perform suitable work is affirmed.

I can't agree with this reasoning or outcome on this record. The Board of Review acknowledged Mr. Hastings couldn't lift as much for a time because of serious illness, acknowledged that he was looking for work that he could do, and was expected to recover soon. But it *still required* that he be able to perform as if he were a healthy man—and not a physically limited cancer patient—before he could qualify for benefits. That blinks at reality and makes no sense to me. The unreasonable decision should be reversed. Today.

Think about what the Board of Review has said: Mr. Hastings is "unable to perform suitable work"; therefore, he gets no public benefit. Why can't he do "suitable work" in the statutory sense? Because he couldn't do all the heavy lifting at the store that he had done when healthy. But who can operate at 100% while coming out of emergency surgery and undergoing cancer treatment that ended in a colostomy bag and a "chest port" so chemotherapy could be reliably administered. The legal principle and result the majority has blessed, with nary an analytical word, plainly produces an unjust result in the real world for no good reason at all, factual or legal.

7

Consider the ramifications. What the denial must be saying is that there is *no* light-duty work option available to sick-but-still-functioning people like Mr. Hastings in the marketplace. Why? Because of a tortured statutory reading. The error means a physically limited person due to illness must be capable of functioning as he or she did when healthy, or you get no benefits. *Not even if you can admittedly do other lighter work and are seeking it.* "[T]he Board finds that work suitable for [Mr. Hastings] to perform required lifting, even if the claimant is able to do other work not requiring lifting." The "no suitable work" tag = No benefit. Because Mr. Hastings was a fully capable employee during his healthy employment period before disaster struck, he can't qualify for light work now and thereby be deemed capable of "suitable work," a label you must wear before being awarded a benefit. The Board of Review's strained logic, which the majority takes on, produces an unjust outcome and a concerning precedent.

One can only believe that more ill workers will be denied benefits through no fault of their own. What's the public policy behind the benefit Mr. Hastings sought? "The public policy of employment-security law is to set aside resources to be used for the benefit of people who are unemployed through no fault of their own." *Debnam v. Dir.*, 2015 Ark. App. 537, at 4–5, 471 S.W.3d 657, 660. *See also Garrett v. Cline*, 257 Ark. 829, 832, 520 S.W.2d 281, 284 (1975) (stating the purpose of unemployment-compensation statutes is "to protect the state unemployment compensation fund against claims of individuals who would prefer benefits to jobs"). Consider that policy observation CANCELED by today's majority opinion.

Nor is an important statutory-interpretation tenet being applied when warranted: "[W]e do not engage in statutory interpretations that defy common sense and produce absurd results." *Dachs v. Hendrix*, 2009 Ark. 542, at 8–9, 354 S.W.3d 95, 101. After today, we have a precedent whose result functionally equates an active cancer patient looking for lighter work in the marketplace with a worker who commits misconduct, abandons a job, can't correct mistakes, couch surfs, or is a serial absentee, etc. I can't see it.

The bottom line here is as straight as a geometer's: the Board of Review plainly held an unavoidable tragedy against Mr. Hastings. It in fact told him that if he couldn't act as he did when he was healthy, then he can get no benefits now, even if he can do lighter work and is looking for it. This message despite hearing unrebutted testimony that he was willing to work where he could. He was also reaching out to potential employers to see if he could be hired and talked about those interactions with the hearing officer. Mr. Hastings even hoped to be rehired at the liquor store when better because he had no reason to believe he couldn't or wouldn't likely be rehired there. If all that weren't enough, as a gentleman, he continued to speak well of the owner/operator of the liquor store while appealing the initial denial.

*Pay the Man.*

The Board of Review held Mr. Hastings to an unreasonable standard. So, too, has this court. Contributing to this unfortunate outcome is the Board of Review's curious interpretation of Arkansas Code Annotated section 11-10-

9

507(a)(3)(A)(iii) (Supp. 2023) and the majority's stamp of approval on it. We should reverse the decision in E-24-97/2024-BR-309 for an award of benefits.

## II.

Two wrongs don't make a right. In the companion case, E-24-98/2024-BR-310, the Board of Review ruled that Mr. Hastings was disqualified under section 11-10-513(a) and (b) (Supp. 2023), because he "voluntarily left last work without good cause connected with the work due to illness and without making reasonable efforts to preserve his job[.]" In my view, that too is an unsupportable decision. In terms of the standard of review, the Board of Review acted unreasonably and should therefore be reversed again.

Here is what it wrote in the second case opened under the same Mr. Hastings/liquor store separation (my added paragraph break):

> The claimant testified at the Tribunal hearing. He stated that he worked for the employer as a clerk and stocker. He indicated that he had a colonoscopy on November 8, 2023, and was hospitalized the same day after the physician discovered significant swelling in his colon. He said he had to have a colostomy bag inserted, and he was later diagnosed with cancer. The claimant testified that he kept in contact with his supervisor while he was absent from work. He stated that he was contacted by his supervisor on November 13, 2023, and that the supervisor told him, "We need employees; we're going to get you off the books so we can hire someone else." The claimant maintained that he did not quit his job.
>
> When asked what efforts he took to keep his job, the claimant responded by stating that he was a model employee and kept in contact with the employer. The written record contains the Application for Unemployment Insurance Benefits dated November 20, 2023. In the application, the claimant indicated that his reason for separating from last work was that he was on medical leave. The record contains the Notice to Last Employer, which was filled out by Daniel Matson, the employer's owner. In it, Matson reported that the claimant quit his job due to health reasons. Additionally, the record contains a Miscellaneous–Claimant Statement. In it, the claimant indicated that he could not work, and he informed his employer that he could not work. He also indicated that he did not request a leave of

10

absence before separating from the job. In a separate Miscellaneous-Claimant Statement, the claimant reported that he did not feel as though he quit the job.

The issue before the Board is whether the claimant was disqualified from benefits under Arkansas Code Annotated sections 11-10-513 or 514. The claimant stated that he did not quit his job. However, the written record shows otherwise. The claimant indicated that he was separated from work due to medical leave, and the employer returned a form showing that the claimant quit his job for health reasons. In his statement to the Division, the claimant reported that he let his supervisor know that he could not work for the employer. The claimant's statement in the written record, being more proximate in time to the separation and more consistent with the employer's report of his separation from work, is more credible. Thus, the Board finds that the claimant initiated the separation from work when he informed his supervisor that he could not work. Accordingly, the claimant quit his job.

In cases of quit, the claimant must show by a preponderance of the evidence that he voluntarily left last work with good cause connected with the work. *Keener v. Dir.*, 2021 Ark. App. 88, 618 S.W.3d 446. The claimant quit due to illness. His reason for quitting was not attributable to the employer and thus not connected with the work. State law provides an exception to the disqualification if the claimant quit last work due to illness and after making reasonable efforts to preserve job rights. Ark. Code Ann. § 11-10-513(b). While the claimant may have kept in contact with the employer, he did not request a leave of absence.

The Board notes that the Arkansas Court of Appeals held in *Woodunique, Inc., v. Director*, 103 Ark. App. 280, 103 S.W.3d 699 (2008), that a claimant's failure to specifically attempt to obtain a leave of absence was evidence that the claimant did not make reasonable efforts to preserve job rights. The claimant also did not make other efforts beyond keeping in contact with the employer. Therefore, the Tribunal decision finding that the claimant voluntarily left last work without good cause connected with the work is affirmed.

Here again I can't agree with the Board of Review. The ruling ignores Mr. Hastings' testimony at the hearing at which no employer representative appeared to rebut anything he said under oath. Further, some initial employer box-checking has received a myopic, hyper-selective treatment. "The record contains the Notice to Last Employer, which was

filled out by Daniel Matson, the employer's owner. In it, Matson reported that the claimant quit his job due to health reasons." Here the Board of Review is referring to *only* one X marked in one box, on one form, during the initial claim process. One X placed in one box, by a self-interested and aged owner/operator (read the hearing transcript), is all it takes to sweep Mr. Hastings under the benefits rug? By the way, speaking of fair and balanced, Mr. Hastings had the chance to mark that same box on his related form, and it's left BLANK. Why does the early box-checking "tie" go to the otherwise silent and absent employer? What about the Board of Review's acknowledgement that (my emphasis), "[Mr. Hastings] stated that he was contacted by his supervisor on November 13, 2023, and that the supervisor told him, '*We need employees; we're going to get you off the books so we can hire someone else.*' *The claimant maintained that he did not quit his job*." What of all the unrebutted hearing testimony, and why doesn't it cut heavily in favor of Mr. Hastings? I think it does.

Regarding whether Mr. Hastings took sufficient steps to preserve his job rights, I can't agree that a man in his position needed to do more under the circumstances. He faced a jarring and critical health situation such that his life was upended within one week. The record convinces me that he acted reasonably and should be awarded benefits. If there was some murkiness in the employer/employee space while Mr. Hastings was saving his life, the tie should go to the claimant. Nothing approaching "fault" or dilatoriness or a "devil may care" attitude or action can fairly be stuck to Mr. Hastings' case files. The decision in E–24-98/2024–BR–310 should therefore be reversed.

*Pay the Man.*

★ ★ ★

"I don't see how emergency surgery could disqualify me from [benefits]," Mr. Hastings expressed to the hearing officer. And he also rightly said, "[T]hese are the circumstances that unemployment insurance is for, you know?" I agree and would reverse the Board of Review's decisions and direct the Division of Workforce Services to pay the proper benefits. The Arkansas Supreme Court has before corrected this court's wrong in a much less drastic unemployment-benefits context, so perhaps there is some hope yet. *See* Ark. Sup. Ct. R. 2-4; *Garrett v. Dir.*, 2014 Ark. 50 (reversing the court of appeals decision on a petition for review).

In the meantime, Godspeed Richard Hastings.

VIRDEN, J., joins.

*Richard Hastings*, pro se appellant.

*Cynthia L. Uhrynowycz*, Associate General Counsel, for appellee.